## DEPOSIT GUARANTY NATIONAL BANK OF JACKSON, MISSISSIPPI *v.* ROPER ET AL.

No. 78–904.   Argued October 2, 1979—Decided March 19, 1980

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, REHNQUIST, and STEVENS, JJ., joined. REHNQUIST, J., *post*, p. 340, and STEVENS, J., *post*, p. 342, filed concurring opinions. BLACKMUN, J., filed an opinion concurring in the judgment, *post*, p. 344. POWELL, J., filed a dissenting opinion, in which STEWART, J., joined, *post*, p. 344.

*William F. Goodman, Jr.*, argued the cause for petitioner. With him on the briefs was *Vardaman S. Dunn*.

*Champ Lyons, Jr.*, argued the cause for respondents. With him on the brief were *Frederick G. Helmsing* and *W. Roberts Wilson*.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether a tender to named plaintiffs in a class action of the amounts claimed in their individual capacities, followed by the entry of judgment in their favor on the basis of that tender, over their objection, moots the case and terminates their right to appeal the denial of class certification.

I

Respondents, holders of credit cards issued on the "Bank-Americard" plan by petitioner Deposit Guaranty National Bank, sued the bank in the United States District Court for the Southern District of Mississippi, seeking to represent both

their own interests and those of a class of similarly aggrieved customers. The complaint alleged that usurious finance charges had been made against the accounts of respondents and a putative class of some 90,000 other Mississippi credit card holders.

Respondents' cause of action was based on provisions of the National Bank Act, Rev. Stat. §§ 5197, 5198, as amended, 12 U. S. C. §§ 85, 86. Section 85 permits banks within the coverage of the Act to charge interest "at the rate allowed by the laws of the State, Territory, or District where the bank is located." In a case where a higher rate of interest than allowed has been "knowingly" charged, § 86 allows a person who has paid the unlawful interest to recover twice the total interest paid.[1]

The modern phenomenon of credit card systems is largely dependent on computers, which perform the myriad accounting functions required to charge each transaction to the customer's account. In this case, the bank's computer was programmed so that, on the billing date, it added charges, subtracted credits, added any finance charges due under the BankAmericard plan, and prepared the customers' statements. During the period in question, the bank made a monthly service charge of 1½% on the unpaid balance of each account. However, customers were allowed 30 days within which to pay accounts without any service charge. If payment was not received within that time, the computer added to the customer's next bill 1½% of the unpaid portion of the prior bill, which was shown as the new balance. The actual finance charges paid by each customer varied depending on the stream of transactions and the repayment plan selected. In addition, the effective annual interest rate paid by a customer would vary because the same 1½% service charge was assessed

---

[1] Respondents' complaint also alleged a cause of action based on the Truth in Lending Act, 15 U. S. C. § 1601 *et seq.*, but that claim was dismissed with prejudice at respondents' request.

against the unpaid balance no matter when the charged transactions occurred within the 30–60-day period prior to the billing date. This $1\frac{1}{2}\%$ monthly service charge is asserted to have been usurious because under certain circumstances the resulting effective annual interest rate allegedly exceeded the maximum interest rate permitted under Mississippi law.

The District Court denied respondents' motion to certify the class, ruling that the circumstances did not meet all the requirements of Federal Rule of Civil Procedure 23 (b)(3).[2] The District Court certified the order denying class certification for discretionary interlocutory appeal, pursuant to 28 U. S. C. § 1292 (b); the proceedings were stayed for 30 days pending possible appellate review of the denial of class certification.

The United States Court of Appeals for the Fifth Circuit denied respondents' motion for interlocutory appeal. The bank then tendered to each named plaintiff, in the form of an "Offer of Defendants to Enter Judgment as by Consent and Without Waiver of Defenses or Admission of Liability," the maximum amount that each could have recovered. The amounts tendered to respondents Roper and Hudgins were $889.42 and $423.54, respectively, including legal interest and court costs. Respondents declined to accept the tender and made a counteroffer of judgment in which they attempted to reserve the right to appeal the adverse class certification ruling. This counteroffer was declined by the bank.

---

[2] The District Court found that the requirements of Rule 23 (b)(3) were not met because the putative class representatives had failed to establish the predominance of questions of law and fact common to class members, and because a class action was not shown to be a superior method of adjudication due to (1) the availability of traditional procedures for prosecuting individual claims in Mississippi courts; (2) the "horrendous penalty," which could result in "destruction of the bank" if claims were successfully aggregated; (3) the substantive law of Mississippi which views the aggregation of usury claims as undesirable; and (4) the tremendous burden of handling 90,000 claims, particularly if counterclaims were filed.

Based on the bank's offer, the District Court entered judgment in respondents' favor, over their objection, and dismissed the action. The bank deposited the amount tendered into the registry of the court, where it remains. At no time has any putative class member sought to intervene either to litigate the merits or to appeal the certification ruling. It appears that by the time the District Court entered judgment and dismissed the case, the statute of limitations had run on the individual claims of the unnamed class members.[3]

When respondents sought review of the class certification ruling in the Court of Appeals, the bank argued that the case had been mooted by the entry of judgment in respondents' favor. In rejecting the bank's contention, the court relied in part on *United Airlines, Inc.* v. *McDonald,* 432 U. S. 385 (1977), in which we held that a member of the putative class could appeal the denial of class certification by intervention, after entry of judgment in favor of the named plaintiff, but before the statutory time for appeal had run. *Roper* v. *Consurve, Inc.,* 578 F. 2d 1106 (CA5 1978). Two members of the panel read Rule 23 as providing for a fiduciary-type obligation of the named plaintiffs to act in a representative capacity on behalf of the putative class by seeking certification at the outset of the litigation and by appealing an adverse certification ruling. In that view, the District Court also had a responsibility to ensure that any dismissal of the suit of the named plaintiffs did not prejudice putative class members. One member of the panel, concurring specially, limited the ruling on mootness to the circumstances of the case, *i. e.,* that, after filing of a class action, the mere tender of an offer of settlement to the named plaintiffs, without ac-

---

[3] Reversal of the District Court's denial of certification by the Court of Appeals may relate back to the time of the original motion for certification for the purposes of tolling the statute of limitations on the claims of the class members. See *United Airlines, Inc.* v. *McDonald,* 432 U. S. 385 (1977).

ceptance, does not moot the controversy so as to prevent the named plantiffs from appealing an adverse certification ruling.

Having rejected the bank's mootness argument, the Court of Appeals reviewed the District Court's ruling on the class certification question. It concluded that all the requisites of Rule 23 had been satisfied and accordingly reversed the adverse certification ruling; it remanded with directions to certify the class and for further proceedings.

Certiorari was sought to review the holdings of the Court of Appeals on both mootness and class certification. We granted the writ, limited to the question of mootness, to resolve conflicting holdings in the Courts of Appeals.[4]  440 U. S. 945.

## II

We begin by identifying the interests to be considered when questions touching on justiciability are presented in the class-action context. First is the interest of the named plaintiffs: their personal stake in the substantive controversy and their related right as litigants in a federal court to employ in appropriate circumstances the procedural device of a Rule 23 class action to pursue their individual claims. A separate consideration, distinct from their private interests, is the responsibility of named plaintiffs to represent the collective interests of the putative class. Two other interests are implicated: the rights of putative class members as potential intervenors, and the responsibilities of a district court to protect both the absent class and the integrity of the judicial process by monitoring the actions of the parties before it.

The Court of Appeals did not distinguish among these distinct interests. It reviewed all possible interests that in its view had a bearing on whether an appeal of the denial of certification should be allowed. These diverse interests are interrelated, but we distinguish among them for purposes

---

[4] *E. g., Winokur* v. *Bell Federal Savings & Loan Assn.,* 560 F. 2d 271 (CA7 1977), cert. denied, 435 U. S. 932 (1978).

of analysis, and conclude that resolution of the narrow question presented requires consideration only of the private interest of the named plaintiffs.

## A

The critical inquiry, to which we now turn, is whether respondents' individual and private case or controversy became moot by reason of petitioner's tender or the entry of judgment in respondents' favor. Respondents, as holders of credit cards issued by the bank, claimed damages in their private capacities for alleged usurious interest charges levied in violation of federal law. Their complaint asserted that they had suffered actual damage as a result of illegal acts of the bank. The complaint satisfied the case-or-controversy requirement of Art. III of the Constitution.

As parties in a federal civil action, respondents exercised their option as putative members of a similarly situated cardholder class to assert their claims under Rule 23. Their right to assert their own claims in the framework of a class action is clear. However, the right of a litigant to employ Rule 23 is a procedural right only, ancillary to the litigation of substantive claims. Should these substantive claims become moot in the Art. III sense, by settlement of all personal claims for example, the court retains no jurisdiction over the controversy of the individual plaintiffs.

The factual context in which this question arises is important. At no time did the named plaintiffs accept the tender in settlement of the case; instead, judgment was entered in their favor by the court without their consent and the case was dismissed over their continued objections.[5] Neither the

---

[5] We note that Rule 23 (e) prescribes certain responsibilities of a district court in a case brought as a class action: once a class is certified, a class action may not be "dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Conceivably, there also may be circumstances, which need not be defined here,

rejected tender nor the dismissal of the action over plaintiffs' objections mooted the plaintiffs' claim on the merits so long as they retained an economic interest in class certification. Although a case or controversy is mooted in the Art. III sense upon payment and satisfaction of a final, unappealable judgment, a decision that is "final" for purposes of appeal does not absolutely resolve a case or controversy until the time for appeal has run. Nor does a confession of judgment by defendants on less than all the issues moot an entire case; other issues in the case may be appealable. We can assume that a district court's final judgment fully satisfying named plaintiffs' private substantive claims would preclude their appeal on that aspect of the final judgment; however, it does not follow that this circumstance would terminate the named plaintiffs' right to take an appeal on the issue of class certification.

Congress has vested appellate jurisdiction in the courts of appeals for review of final decisions of the district courts. 28 U. S. C. § 1291. Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom. A party who receives all that he has sought generally is not aggrieved by the judgment affording the relief and cannot appeal from it. *Public Service Comm'n* v. *Brashear Freight Lines, Inc.*, 306 U. S. 204 (1939); *New York Telephone Co.* v. *Maltbie*, 291 U. S. 645 (1934); *Corning* v. *Troy Iron & Nail Factory*, 15 How. 451 (1854); 9 J. Moore, Federal Practice ¶ 203.06 (2d ed. 1975). The rule is one of federal appellate practice, however, derived from the statutes granting appellate jurisdiction and the historic practices of the appellate courts; it does not have its source in the

where the district court has a responsibility, prior to approval of a settlement and its dismissal of the class action, to provide an opportunity for intervention by a member of the putative class for the purpose of appealing the denial of class certification. Such intervention occurred in *United Airlines, Inc.* v. *McDonald, supra.*

jurisdictional limitations of Art. III. In an appropriate case, appeal may be permitted from an adverse ruling collateral to the judgment on the merits at the behest of the party who has prevailed on the merits, so long as that party retains a stake in the appeal satisfying the requirements of Art. III.[6]

An illustration of this principle in practice is *Electrical Fittings Corp.* v. *Thomas & Betts Co.*, 307 U. S. 241 (1939). In that case, respondents sued petitioners for infringement of a patent. In such a suit, the defense may prevail either by successfully attacking the validity of the patent or by successfully defending the charge of infringement. In *Electrical Fittings* the decree of the District Court adjudged the patent valid but dismissed the complaint for failure to prove infringement. The respondents did not appeal, but petitioners sought review in the Court of Appeals of so much of the decree as adjudicated the patent valid. Respondents filed a motion to dismiss the appeal "based on the ground that the appeal can raise no questions not already moot because of the fact that the [petitioners] have already been granted in the dismissal of the bill all the relief to which they are entitled." 100 F. 2d 403, 404 (CA2 1938). The Court of Appeals dismissed the appeal on this ground after ruling that the decree of the District Court would not in subsequent suits, as a matter of collateral estoppel or otherwise, influence litigation on the issue of the patent's validity. On review here, this Court did not question the view that the ruling on patent validity would

---

[6] The dissent construes the notice of appeal as a complete abandonment by respondents of their Art. III personal stake in the appeal. *Post,* at 346. Such is not the case. Indeed, the appeal was taken by the named plaintiffs, although its only purpose was to secure class certification; throughout this litigation, respondents have asserted as their personal stake in the appeal their desire to shift to successful class litigants a portion of those fees and expenses that have been incurred in this litigation and for which they assert a continuing obligation. See Plaintiffs-Appellants' Brief in Opposition to Motion to Dismiss Appeal and Reply Brief in No. 76-3600 (CA5), pp. 4, 12, 16, 17.

have no effect on subsequent litigation. Nevertheless, a unanimous Court allowed the appeal to reform the decree:

"A party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree. But here the decree itself purports to adjudge the validity of [the patent], and though the adjudication was immaterial to the disposition of the cause, it stands as an adjudication of one of the issues litigated. We think the petitioners were entitled to have this portion of the decree eliminated, and that the Circuit Court of Appeals had jurisdiction, as we have held this court has, to entertain the appeal, not for the purpose of passing on the merits, but to direct the reformation of the decree." 307 U. S., at 242 (footnotes omitted).

Although the Court limited the appellate function to reformation of the decree, the holding relevant to the instant case was that the federal courts retained jurisdiction over the controversy notwithstanding the District Court's entry of judgment in favor of petitioners. This Court had the question of mootness before it, yet because policy considerations permitted an appeal from the District Court's final judgment and because petitioners alleged a stake in the outcome, the case was still live and dismissal was not required by Art. III. The Court perceived the distinction between the definitive mootness of a case or controversy, which ousts the jurisdiction of the federal courts and requires dismissal of the case, and a judgment in favor of a party at an intermediate stage of litigation, which does not in all cases terminate the right to appeal.[7]

---

[7] In a sense, the petitioner in *Electrical Fittings* sought review of the District Court's procedural error. The District Court was correct in inquiring fully into the validity of the patent, *Sinclair & Carroll Co.* v. *Interchemical Corp.*, 325 U. S. 327, 330 (1945), but was incorrect to ad-

## B

We view the denial of class certification as an example of a procedural ruling, collateral to the merits of a litigation, that is appealable after the entry of final judgment.[8] The denial of class certification stands as an adjudication of one of the issues litigated. As in *Electrical Fittings,* the respondents here, who assert a continuing stake in the outcome of the appeal, were entitled to have this portion of the District Court's judgment reviewed. We hold that the Court of Appeals had jurisdiction to entertain the appeal only to review the asserted procedural error, not for the purpose of passing on the merits of the substantive controversy.

Federal appellate jurisdiction is limited by the appellant's personal stake in the appeal. Respondents have maintained throughout this appellate litigation that they retain a continuing individual interest in the resolution of the class certification question in their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails. See n. 6, *supra.* This individual interest may be satisfied fully once effect is given to the decision of the Court of Appeals setting aside what it held

judge the patent valid after ruling that there had been no infringement. By doing so, the District Court had decided a hypothetical controversy, *Altvater* v. *Freeman,* 319 U. S. 359, 363 (1943); yet petitioners could take the appeal to correct this error because there had been an adverse decision on a litigated issue, they continued to assert an interest in the outcome of that issue, and for policy reasons this Court considered the procedural question of sufficient importance to allow an appeal.

[8] In *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463 (1978), we held that the class certification ruling did not fall within that narrow category of circumstances where appeal was allowed prior to final judgment as a matter of right under 28 U. S. C. § 1291. However, our ruling in *Livesay* was not intended to preclude motions under 28 U. S. C. § 1292 (b) seeking discretionary interlocutory appeal for review of the certification ruling. See 437 U. S., at 474–475. In some cases such an appeal would promise substantial savings of time and resources or for other reasons should be viewed hospitably.

to be an erroneous District Court ruling on class certification. In *Electrical Fittings,* the petitioners asserted a concern that their success in some unspecified future litigation would be impaired by *stare decisis* or collateral-estoppel application of the District Court's ruling on patent validity. This concern supplied the personal stake in the appeal required by Art. III. It was satisfied fully when the petitioners secured an appellate decision eliminating the erroneous ruling from the decree. After the decree in *Electrical Fittings* was reformed, the then unreviewable judgment put an end to the litigation, mooting all substantive claims. Here the proceedings after remand may follow a different pattern, but they are governed by the same principles.

We cannot say definitively what will become of respondents' continuing personal interest in their own substantive controversy with the petitioner when this case returns to the District Court. Petitioner has denied liability to the respondents, but tendered what they appear to regard as a "nuisance settlement." Respondents have never accepted the tender or judgment as satisfaction of their substantive claims. Cf. *Cover* v. *Schwartz,* 133 F. 2d 541 (CA2 1942). The judgment of the District Court accepting petitioner's tender has now been set aside by the Court of Appeals. We need not speculate on the correctness of the action of the District Court in accepting the tender in the first instance, or on whether petitioner may now withdraw its tender.

Perhaps because the question was not thought to be open to doubt, we have stated in the past, without extended discussion, that "an order denying class certification is subject to effective review after final judgment at the behest of the named plaintiff. . . ." *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463, 469 (1978). In *Livesay,* we unanimously rejected the argument, advanced in favor of affording prejudgment appeal *as a matter of right,* that an adverse class certification ruling came within the "collateral order" exception to the final-judgment rule. The appealability of the class certifica-

tion question *after* final judgment on the merits was an important ingredient of our ruling in *Livesay*. For that proposition, the Court cited *United Airlines, Inc.* v. *McDonald*, 432 U. S. 385 (1977). That case involved, as does this, a judgment entered on the merits in favor of the named plaintiff. The *McDonald* Court assumed that the named plaintiff would have been entitled to appeal a denial of class certification.

The use of the class-action procedure for litigation of individual claims may offer substantial advantages for named plaintiffs; it may motivate them to bring cases that for economic reasons might not be brought otherwise.[9] Plainly there has been a growth of litigation stimulated by contingent-fee agreements and an enlargement of the role this type of fee arrangement has played in vindicating the rights of individuals who otherwise might not consider it worth the candle to embark on litigation in which the optimum result might be more than consumed by the cost. The prospect of such fee arrangements offers advantages for litigation by named plaintiffs in class actions as well as for their attorneys.[10] For better or worse, the financial incentive that class actions offer to the legal profession is a natural outgrowth of the increasing reliance on the "private attorney general" for the vindication of legal rights; obviously this development has been facilitated by Rule 23.

---

[9] A significant benefit to claimants who choose to litigate their individual claims in a class-action context is the prospect of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among all members of the class who benefit from any recovery. Typically, the attorney's fees of a named plaintiff proceeding without reliance on Rule 23 could exceed the value of the individual judgment in favor of any one plaintiff. Here the damages claimed by the two named plaintiffs totaled $1,006.00. Such plaintiffs would be unlikely to obtain legal redress at an acceptable cost, unless counsel were motivated by the fee-spreading incentive and proceeded on a contingent-fee basis. This, of course, is a central concept of Rule 23.

[10] This case does not raise any question as to the propriety of contingent-fee agreements.

The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device. That there is a potential for misuse of the class-action mechanism is obvious. Its benefits to class members are often nominal and symbolic, with persons other than class members becoming the chief beneficiaries. But the remedy for abuses does not lie in denying the relief sought here, but with re-examination of Rule 23 as to untoward consequences.

A district court's ruling on the certification issue is often the most significant decision rendered in these class-action proceedings.[11] To deny the right to appeal simply because the defendant has sought to "buy off" the individual private claims of the named plaintiffs would be contrary to sound judicial administration. Requiring multiple plaintiffs to bring separate actions, which effectively could be "picked off" by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions; moreover it would invite waste of judicial resources by stimulating successive suits brought by others claiming aggrievement. It would be in the interests of a class-action defendant to forestall any appeal of denial of class certification if that could be accomplished by tendering the individual damages claimed by the named plaintiffs. Permitting appeal of the district court's certification ruling—either at once by interlocutory appeal, or after entry of judgment on the merits—also minimizes problems raised by "forum shopping" by putative class

_____

[11] See A. Miller, An Overview of Federal Class Actions: Past, Present, and Future 12 (Federal Judicial Center 1977).

representatives attempting to locate a judge perceived as sympathetic to class actions.

That small individual claims otherwise might be limited to local and state courts rather than a federal forum does not justify ignoring the overall problem of wise use of judicial resources. Such policy considerations are not irrelevant to the determination whether an adverse procedural ruling on certification should be subject to appeal at the behest of named plaintiffs. Courts have a certain latitude in formulating the standards that govern the appealability of procedural rulings even though, as in this case, the holding may determine the absolute finality of a judgment, and thus, indirectly, determine whether the controversy has become moot.

We conclude that on this record the District Court's entry of judgment in favor of named plaintiffs over their objections did not moot their private case or controversy, and that respondents' *individual* interest in the litigation—as distinguished from whatever may be their representative responsibilities to the putative class [12]—is sufficient to permit their appeal of the adverse certification ruling.

*Affirmed.*

MR. JUSTICE REHNQUIST, concurring.

I write briefly to state what seems to me to be sufficient differences between this case and *United States Parole Comm'n* v. *Geraghty, post,* p. 388, to allow the appeal of the denial of class certification in this case, and to dismiss the attempted appeal of the same question in *Geraghty* as moot. If I were writing on a clean slate, I might well resolve both these cases against the respondents. But the Court today has not cleaned the slate or been successful in formulating any sound princi-

---

[12] Difficult questions arise as to what, if any, are the named plaintiffs' responsibilities to the putative class *prior* to certification; this case does not require us to reach these questions.

ples to replace what seem to me to be the muddled and inconsistent ones of the past. Compare *Sosna* v. *Iowa,* 419 U. S. 393 (1975), with *Franks* v. *Bowman Transportation Co.,* 424 U. S. 747 (1976); *United Airlines, Inc.* v. *McDonald,* 432 U. S. 385, 393 (1977), with *Pasadena City Bd. of Education* v. *Spangler,* 427 U. S. 424, 430 (1976); *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463, 469, 470, n. 15 (1978), with *Indianapolis School Comm'rs* v. *Jacobs,* 420 U. S. 128 (1975); and now this case, with *United States Parole Comm'n* v. *Geraghty.*

Article III, and this Court's precedents in *Jacobs, supra,* and *Spangler, supra,* require dismissal of the action in *Geraghty* because there is simply no individual interest remaining, no certified class or intervenors to supply that interest, and the action is not within that "narrow class of cases" that are "distinctly 'capable of repetition, yet evading review.'" *Gerstein* v. *Pugh,* 420 U. S. 103, 110, n. 11 (1975). The facts in this case, in contrast, fit within the framework of the precedents permitting continuation of the action.

The distinguishing feature here is that the defendant has made an *unaccepted* offer of tender in settlement of the individual putative representative's claim. The action is moot in the Art. III sense only if this Court adopts a rule that an individual seeking to proceed as a class representative is required to accept a tender of only his individual claims. So long as the court does not require such acceptance, the individual is required to prove his case and the requisite Art. III adversity continues. Acceptance need not be mandated under our precedents since the defendant has not offered all that has been requested in the complaint (*i. e.*, relief for the class) and any other rule would give the defendant the practical power to make the denial of class certification questions unreviewable. Since adversity is in fact retained, and this set of facts fits within a "narrow class of cases" where a contrary rule would lead to the "reality" that "otherwise the issue would evade review," I think our precedents provide for the main-

tenance of this action. *Sosna, supra,* at 402, n. 11; *Gerstein, supra.* Accordingly, I join in the opinion of the Court in this case and in MR. JUSTICE POWELL's dissent in *Geraghty.*

MR. JUSTICE STEVENS, concurring.

In his dissenting opinion MR. JUSTICE POWELL states that, because the District Court erroneously refused to certify the class and because no member of the class attempted to intervene, the respondents "are the only plaintiffs arguably present in court." *Post,* at 346. This position is apparently based on the notion that, unless class members are present for all purposes (and thus may be liable for costs, bound by the judgment, etc.), they cannot be considered "present" for any purpose. I respectfully disagree. In my opinion, when a proper class-action complaint is filed, the absent members of the class should be considered parties to the case or controversy at least for the limited purpose of the court's Art. III jurisdiction. If the district judge fails to certify the class, I believe they remain parties until a final determination has been made that the action may not be maintained as a class action. Thus, the continued viability of the case or controversy, as those words are used in Art. III, does not depend on the district judge's initial answer to the certification question; rather, it depends on the plaintiffs' right to have a class certified.[1]

---

[1] There is general agreement that, if a class has been properly certified, the case does not become moot simply because the class representative's individual interest in the merits of the litigation has expired. In such a case the absent class members' continued stake in the controversy is sufficient to maintain its viability under Art. III. In a case in which certification has been denied by the district court, however, a court of appeals cannot determine whether the members of the class continue to have a stake in the outcome until it has determined whether the action can properly be maintained as a class action. If it is not a proper class action, then the entire case is moot. If, on the other hand, the district court's refusal to certify the class was erroneous, I believe there remains

Accordingly, even if the named plaintiff's personal stake in the lawsuit is effectively eliminated,[2] no question of mootness arises simply because the remaining adversary parties are unnamed.[3] Rather, the issue which arises is whether the

a live controversy which the courts have jurisdiction to resolve under Art. III.

I recognize that there is tension between the approach I have suggested and the Court's *sua sponte* decision in *Indianapolis School Comm'rs* v. *Jacobs,* 420 U. S. 128. See also *Pasadena City Bd. of Education* v. *Spangler,* 427 U. S. 424, 430. As MR. JUSTICE BLACKMUN points out in *United States Parole Comm'n* v. *Geraghty, post,* at 400, n. 7, that case is distinguishable from this case because it involved an attempt to litigate the merits of an appeal on behalf of an improperly certified class. I agree that the Court could not properly consider the merits until the threshold question of whether a class should have been certified was resolved. However, I disagree with the Court's conclusion that the entire action had to be dismissed as moot. In my view, the absent class members remained sufficiently present so that a remand on the class issue would have been a more appropriate resolution.

Just as absent class members whose status has not been fully adjudicated are not "present" for purposes of litigating the merits of the case, I would not find them present for purposes of sharing costs or suffering an adverse judgment. If a class were ultimately certified, the class members would, of course, retain the right to opt out.

[2] I agree with the Court's determination in this case and in *Geraghty* that the respective named plaintiffs continue to have a sufficient personal stake in the outcome to satisfy Art. III requirements. See *ante,* at 340; *Geraghty, post,* at 404.

[3] The status of unnamed members of an uncertified class has always been difficult to define accurately. Such persons have been described by this Court as "parties in interest," see *Smith* v. *Swormstedt,* 16 How. 288, 303; as "interested parties," see *Supreme Tribe of Ben-Hur* v. *Cauble,* 255 U. S. 356, 366; or as "absent parties," see *Hansberry* v. *Lee,* 311 U. S. 32, 42–45. There is nothing novel in my suggestion that such "absent parties" may be regarded as parties for the limited purpose of analyzing the status of the case or controversy before a certification order has been entered. Indeed, since the concept of "absent parties" was developed long before anyone conceived of certification orders, I find it difficult to understand why the existence of a case or controversy in a constitutional sense should depend on compliance with a procedural requirement that was first created in 1966.

named plaintiff continues to be a proper class representative for the purpose of appealing the adverse class determination. Cf. *East Texas Motor Freight System, Inc.* v. *Rodriguez*, 431 U. S. 395, 403–406; *United States Parole Comm'n* v. *Geraghty*, *post*, at 407. In my judgment, in this case, as in *Geraghty*, the named plaintiffs clearly remained appropriate representatives of the class at least for that limited purpose.[4]

I therefore join the opinion of the Court.

MR. JUSTICE BLACKMUN, concurring in the judgment.

I concur in the judgment because, under *United States Parole Comm'n* v. *Geraghty*, *post*, p. 388, respondents' appeal of the order denying class certification is not moot. I agree with the Court that the ruling on a class certification motion stands as a litigated issue which does not become moot just because the named plaintiff's suit on the merits is mooted. I would not limit appealability of this procedural motion, however, to situations where there is a possibility that the named plaintiff will be able to recover attorney's fees from either the defendant or the fund awarded to the class.

MR. JUSTICE POWELL, with whom MR. JUSTICE STEWART joins, dissenting.

Respondents are two credit card holders who claim that petitioner charged them usurious interest in violation of the National Bank Act and Mississippi law.[1] They filed this

---

[4] My view of the jurisdictional issue would not necessarily enlarge the fiduciary responsibilities of the class representative as MR. JUSTICE POWELL suggests, see *post*, at 358–359, n. 21. In any event, I do not share the concern expressed in his opinion about the personal liability of a class representative for costs and attorney's fees if the case is ultimately lost. Anyone who voluntarily engages in combat—whether in the courtroom or elsewhere—must recognize that some of his own blood may be spilled.

[1] Jurisdiction was premised on the National Bank Act, 12 U. S. C. §§ 85, 86, which adopts the interest limits set by state law, and on 28 U. S. C. § 1355.

action late in 1971 to recover those charges plus a penalty equal to the same amount, for individual totals of $683.30 and $322.70. App. 59. Respondents also sought relief on behalf of a class alleged to include 90,000 persons with claims aggregating $12 million. After four years of litigation, the District Court denied respondents' motion for class certification. Seven months later, petitioner tendered to respondents the full amount of their individual claims plus legal interest and court costs. Over respondents' objection, the District Court entered final judgment in their favor. Petitioner then deposited the full amount due with the Clerk of the Court.

No one disputes that the petitioner has tendered everything that respondents could have recovered from it in this action. Nevertheless, the Court of Appeals for the Fifth Circuit rejected petitioner's suggestion of mootness and reversed the denial of class certification. This Court affirms the judgment of the Court of Appeals, after finding that respondents retain a personal stake in sharing the expense of litigation with members of the putative class. *Ante,* at 334, n. 6, 336. This speculative interest simply will not sustain the jurisdiction of an Art. III court under established and controlling precedents. Accordingly, I dissent.

## I

Although there are differences, this case is similar to *United States Parole Comm'n* v. *Geraghty, post,* p. 388, in one important respect: both require us to decide whether putative class representatives may appeal the denial of class certification when they can derive no benefit whatever from the relief sought in the action. Here, as in *Geraghty,* the District Court refused to certify a class. In this case, however, the Court recognizes established Art. III doctrine. It states that the "right . . . to employ Rule 23" is a "procedural right only, ancillary to the litigation of substantive claims." *Ante,* at 332. It also agrees that a federal court "retains no juris-

diction over the controversy" when the parties' "substantive claims become moot in the Art. III sense." *Ibid.* Moreover, the Court acknowledges the familiar principle that a party who has no personal stake in the outcome of an action presents no case or controversy cognizable in a federal court of appeals. *Ante,* at 334, 336. These are indeed the dispositive principles. My disagreement is with the way in which the Court applies them in this case. In my view, these principles unambiguously require a finding of mootness.

## A

Since no class has been certified and no one has sought to intervene, respondents are the only plaintiffs arguably present in court. Yet respondents have no continuing interest in the injuries alleged in their complaint. They sought only damages; those damages have been tendered in full.[2] Respondents make no claim that success on the certification motion would entitle them to additional relief of any kind from the petitioner.[3] Their personal claims to relief have been abandoned so completely that no appeal was taken in their own names. The notice of appeal filed with the District Court recites that respondents appeal only "on behalf of all others similarly situated. . . ." App. 63.

This in itself is compelling evidence that respondents have no interest in the "individual and private case or controversy" relied on by the Court today. *Ante,* at 332. But even without such evidence, this and other courts routinely have held that

---

[2] Although respondents also asked for attorney's fees, their complaint shows that fees were to be granted only from the damages ultimately awarded to them or the class. App. 13–14. There is no possibility of prospective relief because the Mississippi usury statute was amended in 1974 to authorize, *inter alia,* the charges at issue in this case. 1974 Miss. Gen. Laws, ch. 564, § 7; see Miss. Code Ann. § 75–17–1 (6) (Supp. 1979).

[3] Neither the Court nor the respondents have asserted that the petitioner's tender fails to include all costs and fees for which it could be held liable. See Part II–B, *infra.*

a tender of full relief remedies a plaintiff's injuries and eliminates his stake in the outcome. *California* v. *San Pablo & Tulare R. Co.*, 149 U. S. 308, 313–314 (1893); *Drs. Hill & Thomas Co.* v. *United States*, 392 F. 2d 204 (CA6 1968) (*per curiam*); *Lamb* v. *Commissioner*, 390 F. 2d 157 (CA2 1968) (*per curiam*); *A. A. Allen Revivals, Inc.* v. *Campbell*, 353 F. 2d 89 (CA5 1965) (*per curiam*). It is the tender itself that moots the case whether or not a judgment is entered. *Ibid.* Thus, the law is clear that a federal court is powerless to review the abstract questions remaining in a case when the plaintiff has refused to accept a proffered settlement that fully satisfies his claims.

I know of no authority remotely suggesting that the result should differ because the District Court has entered a judgment in favor of respondents instead of dismissing their lawsuit as moot.[4] It is certainly true, as the Court observes, that the entry of judgment in favor of a party does not in itself moot his case. *Ante,* at 332–333. There never has been any doubt that a party may appeal those aspects of a generally favorable judgment that affect him adversely. See 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3902 (1976); 9 J. Moore, Federal Practice ¶ 203.06 (2d ed. 1975). But the requirement of adverse effect is more than a rule "of federal appellate practice." *Ante,* at 333. As we have held repeatedly, and as the Court concedes, *ante,* at 334, 336, Art. III itself requires a live controversy in which a personal stake is at issue "throughout the entirety of the litigation." *Sosna* v. *Iowa,* 419 U. S. 393, 402 (1975). See, *e. g., Preiser* v. *Newkirk,* 422 U. S. 395, 401–402 (1975).

It is this constitutional limitation, and not any rule of practice, that has impelled federal courts uniformly to require a

---

[4] The "statutory right" to appeal, *ante,* at 333, itself cannot supply a personal stake in the outcome, for Congress cannot abrogate Art. III limitations on the jurisdiction of the federal courts. *Gladstone, Realtors* v. *Village of Bellwood,* 441 U. S. 91, 100 (1979).

showing of continuing adverse effect in order to confer "standing to appeal." *Barry* v. *District of Columbia Bd. of Elections,* 188 U. S. App. D. C. 432, 433, 580 F. 2d 695, 696 (1978); 15 Wright, Miller, & Cooper, *supra,* § 3902; see *Altvater* v. *Freeman,* 319 U. S. 359 (1943); *Electrical Fittings Corp.* v. *Thomas & Betts Co.,* 307 U. S. 241 (1939); *Kapp* v. *National Football League,* 586 F. 2d 644, 650 (CA9 1978); *Cover* v. *Schwartz,* 133 F. 2d 541 (1942), cert. denied, 319 U. S. 748 (1943).[5]  As these cases show, the requirements of Art. III are not affected by the "factual context" in which a suggestion of mootness arises.  See *ante,* at 332.  Whatever the context, Art. III asks but a single question: Is there a continuing controversy between adverse parties who retain the requisite stake in the outcome of the action?

*Electrical Fittings Corp.* v. *Thomas & Betts Co., supra,* is the case primarily relied upon by the Court.  It provides little or no support for today's ruling.  In *Electrical Fittings,* a limited appeal was allowed because the petitioner himself was prejudiced by the inclusion of an unnecessary and adverse finding in a generally favorable decree.  See *ante,* at 337.

---

[5] *United Airlines, Inc.* v. *McDonald,* 432 U. S. 385 (1977), and *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463 (1978), are not to the contrary. Incidental dictum in both cases stated that the denial of class certification is subject to appellate review after final judgment at the behest of the named plaintiffs.  Neither case discussed mootness, and neither analyzed the proposition in any way.  Indeed, the only authority cited in *Coopers & Lybrand* was *United Airlines,* see 437 U. S., at 469, and the only authority cited in *United Airlines* was a concession made by the defendant and a list of cases from the Courts of Appeals, not one of which dealt with a suggestion of mootness in an analogous situation, see 432 U. S., at 393, and n. 14.  Such statements, casually enunciated without a word of explanation in opinions dealing with unrelated legal questions, are not controlling or even persuasive when they are shown on further reflection to have been inconsistent with settled law.  As the Court agrees today, neither case creates an exception to the fundamental rule that "[f]ederal appellate jurisdiction is limited by the appellant's personal stake in the appeal." *Ante,* at 336.

Here, the existence of the District Court's order denying certification has no effect whatever on the respondents. Thus, the personal stake that justified the *Electrical Fittings* appeal is not present in this case. Absent such a stake, it is simply irrelevant that "policy considerations" sometimes may favor an appeal from "a procedural ruling, collateral to the merits of a litigation." Nor is it significant that the ruling "stands as an adjudication of one of the issues litigated." *Ante,* at 335, 336. Collateral rulings—like other rulings—may be appealed only when the requirements of Art. III are satisfied.

## B

After recognizing that the right to appeal is subject to the "jurisdictional limitations of Art. III," the Court agrees that only a "party [who] retains a stake in the appeal [can satisfy] the requirements of Art. III." *Ante,* at 334; see *ante,* at 336. The Court also agrees that respondents have no remaining stake in "the merits of the substantive controversy." *Ibid.* Nevertheless, it holds that respondents retain a personal stake in this appeal because they "desire to shift to successful class litigants a portion of those fees and expenses that have been incurred in this litigation and for which they assert a continuing obligation." *Ante,* at 334, n. 6; see *ante,* at 336.[6] This conclusion is neither legally sound nor supported by the record.

---

[6] The Court also mentions that "[t]he use of the class-action procedure for litigation of individual claims may offer substantial advantages for named plaintiffs. . . ." *Ante,* at 338. But any such advantages cannot accrue to these respondents, who will not be litigating their own claims on remand. Indeed, the Court refers to respondents in this context only to point out that their total damages were so small that they "would be unlikely to obtain legal redress at an acceptable cost" if they could not do so by means of a class action. *Ante,* at 338, n. 9. We may assume that respondents had some interest in the class-action procedure as a means of interesting their lawyers in the case or obtaining a satisfactory

350

The Court fails to identify a single item of expense, chargeable to the petitioner, that was incurred by respondents before the petitioner's tender. Similarly, respondents have been conspicuously vague in identifying the "fees and expenses" relied upon as supplying the adverse interest essential to a live controversy.[7] The only expense mentioned by respondents, apart from court costs included in the petitioner's tender, is not a present obligation at all. It is an offer to provide security for costs in the event a class ultimately is certified. Brief for Respondents 33; App. 78. Nor does the attorney's fee arrangement in this case create any obligation, present or future, that can be affected by the certification of a class. Respondents' complaint identifies the fee to be paid, subject to court approval, as "twenty-five per cent (25%)" of the amount of the final judgment. *Id.*, at 14, 16.[8] No arrange-

---

settlement. This may be an interest properly furthered by Rule 23, but once respondents obtained both access to court and full individual relief that interest disappeared.

[7] Perhaps the strongest of respondents' statements is:

"Of course, the interest of the [respondents] in assertion of the right to proceed on behalf of the class includes such matters as the prospect for spreading attorney's fees and expenses among more claimants and thus reducing the percentage that would otherwise be payable by them." Plaintiffs-Appellants' Brief in Opposition to Motion to Dismiss Appeal and Reply Brief, filed in *Roper* v. *Consurve, Inc.*, No. 76-3600 (CA5, Jan. 10, 1977).

[8] Respondents' "Demand for Judgment" asks the court to award the "[c]ost of this action as well as attorney fees in the amount of 25% as hereinabove alleged, or such other amount as may be deemed fit and proper by the Court." App. 16. The request for fees was clarified in Paragraph VI of the amended complaint, which reads as follows:

"Plaintiff alleges that the Clerk of this Court be designated custodian of the funds and judgment to be paid Plaintiff and other persons similarly situated, by Defendants and the Clerk deposit said funds in a suitable depository and, upon proper order of this Court, disburse said funds after deduction of necessary expenses and attorney fees to Plaintiff's attorneys herein of twenty-five per cent (25%) of the amount so paid, the same being reasonable by all standards, including that alleged and

ment other than this customary type contingent fee is identified in the record or the briefs.  Yet, no one has explained how respondents' obligation to pay 25% of their recovery to counsel could be reduced if a class is certified and its members become similarly obligated to pay 25% of their recovery.  Thus, the asserted interest in "spreading [of] attorney's fees and expenses" [9] relates to no present obligation.  It is at most an expectation—of the respondents' and particularly of their counsel—that certain fees and expenses may become payable in the event a class is certified.  That expectation is wholly irrelevant to the existence of a present controversy between petitioner and respondents.

The Court's reliance on unidentified fees and expenses cannot be reconciled with the repeated admonition that "unadorned speculation will not suffice to invoke the federal judicial power."  *E. g., Simon v. Eastern Ky. Welfare Rights Org.,* 426 U. S. 26, 44 (1976).  Such speculation is particularly inappropriate in this case, since neither the Court nor the respondents have suggested that the *petitioner* is or ever will be liable for the fees or expenses relied upon.  Indeed, the American Rule would bar an award of attorney's fees against this petitioner.  Thus, respondents' "injury"—if any exists— is not one that "fairly can be traced" to the petitioner.  *Id.,* at 41–42; see *Gladstone, Realtors v. Village of Bellwood,* 441 U. S. 91, 99 (1979).[10]  Whatever may be the basis for the

---

utilized by Defendants in suing certain members in of [*sic*] the class in State Courts for unpaid accounts."  *Id.,* at 13–14.

[9] See n. 7, *supra.*

[10] Far-reaching consequences could flow from a rule that fees recoverable from putative class members may be "traced" to the class defendant for purposes of the case-or-controversy requirement.  At the least, this rule would support a claim that a person who has accepted full settlement of his individual claim is entitled to file suit on behalf of an unrecompensed class.  Apparently, the putative plaintiff need only "asser[t]," *ante,* at 334, n. 6, that fees incurred in anticipation of the litigation ultimately might be shared with a prevailing class.

respondents' asserted desire to share fees and expenses with unnamed members of a class, the petitioner is merely a bystander. "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina* v. *Rice,* 404 U. S. 244, 246 (1971). This elementary principle should dispose of the case.

## C

Since respondents have no continuing personal stake in the outcome of this action, Art. III and the precedents of this Court require that the case be dismissed as moot. *E. g., Ashcroft* v. *Mattis,* 431 U. S. 171, 172–173 (1977) *(per curiam);* *Weinstein* v. *Bradford,* 423 U. S. 147 (1975) *(per curiam);* *Preiser* v. *Newkirk,* 422 U. S., at 401–404; *Indianapolis School Comm'rs* v. *Jacobs,* 420 U. S. 128 (1975); *DeFunis* v. *Odegaard,* 416 U. S. 312, 316–320 (1974) *(per curiam);* *North Carolina* v. *Rice, supra,* at 246; *SEC* v. *Medical Committee for Human Rights,* 404 U. S. 403, 407 (1972).[11]

Respondents do not suggest that their claims are "capable of repetition, yet evading review." Cf. *Gerstein* v. *Pugh,* 420 U. S. 103, 110–111, n. 11 (1975).[12]    And not a single one of the alleged 90,000 class members has sought to intervene in the nine years since this action was filed. Cf. *United Airlines, Inc.* v. *McDonald,* 432 U. S. 385 (1977). Nor has anyone challenged the allegedly usurious charges by informal com-

---

[11] These cases are discussed more fully in *United States Parole Comm'n* v. *Geraghty, post,* at 410–413, 417–419 (POWELL, J., dissenting).

[12] If a class-action defendant were shown to have embarked on a course of conduct designed to insulate the class certification issue from appellate review in order to avoid classwide liability, a court in proper circumstances might find the *Gerstein* test satisfied and the case not moot. See *Susman* v. *Lincoln American Corp.,* 587 F. 2d 866 (CA7 1978); 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3533, p. 208 (Cum. Supp. 1980); Comment, Continuation and Representation of Class Actions Following Dismissal of the Class Representative, 1974 Duke L. J. 573, 599–600.

plaint or protest. Tr. of Oral Arg. 4. Even after certification was denied, the action lay dormant during the seven months in which respondents sought to take an interlocutory appeal, without provoking a response from anyone who previously may have thought that the class action would protect his rights. Apart from the persistence of the lawyers, this has been a noncase since the petitioner tendered full satisfaction of the respondents' individual claims. To be sure, respondents' counsel may have the same interest in an enlarged recovery that is inherent in any contingent fee arrangement. But I know of no decision by any court that holds that a lawyer's interest in a larger fee, to be paid by third persons not present in court, creates the personal stake in the outcome required by Art. III.

## II

Despite the absence of an Art. III controversy, the Court directs a remand in which this federal action will be litigated by lawyers whose only "clients" are unidentified class members who have shown no desire to be represented by anyone.[13] The Court appears to endorse this form of litigation for reasons of policy and practice. It is said to be an effective "response to the existence of injuries unremedied by the regulatory action of government." *Ante,* at 339. I am not aware that such a consideration ever before has influenced this Court in determining whether the *Constitution* confers jurisdiction on the federal courts. In any event, the consequences of a finding of mootness are not likely to be as restrictive as the Court seems to fear. And the Court fails to recognize that allowing this action to proceed without an interested plaintiff will itself generate practical difficulties of some magnitude.

---

[13] I do not suggest that counsel acted improperly in pursuing this case. Since they have prevailed both in this Court and in the Court of Appeals, the responsibility for allowing clientless litigation falls on the federal courts.

## A

A finding of mootness would have repercussions primarily in two situations. The first involves a named plaintiff who fails to obtain class certification and then pursues his case to a successful, litigated judgment. I believe that a subsequent attempt by that plaintiff to appeal the denial of certification generally would be barred by Art. III. But the consequences of applying settled rules of mootness in that situation would not be unjust. If injunctive or declaratory relief were granted, the absent members of the putative class would have obtained by force of *stare decisis* or the decree itself most of the benefits of actual class membership. If, on the other hand, damages were awarded and an appeal permitted, reversal of the certification ruling would enable putative class members to take advantage of a favorable judgment on the issue of liability without assuming the risk of being bound by an unfavorable judgment. Thus, the Court's decision to allow appeals in this situation will reinstate the "one-way intervention" that the 1966 amendments to Rule 23 were intended to eliminate.[14]

Perhaps more commonly, the mootness question will arise when the defendant attempts to force a settlement before judgment, as petitioner did in this case. A defendant certainly will have a substantial incentive to use this tactic in some cases. The Court argues that the result will be to deny compensation to putative class members and jeopardize the enforcement of certain legal rights by " 'private attorney[s] general.' " *Ante,* at 338. The practical argument is not without force. But predicating a judgment on these concerns

---

[14] See Comment, Immediate Appealability of Orders Denying Class Certification, 40 Ohio St. L. J. 441, 470–471 (1979). In actions brought under Rule 23 (b)(3), a class member must decide at the time of certification whether to "opt out" of the action under Rule 23 (c)(2). This provision was designed to bring an end to the "spurious" class action in which class members were permitted to intervene after a decision on the merits in order to secure the benefits of that decision. Notes of the Advisory Committee on 1966 Amendments to Rule 23, 28 U. S. C. App., p. 430.

amounts to judicial policymaking with respect to the adequacy of compensation and enforcement available for particular substantive claims. Such a judgment ordinarily is best left to Congress. At the very least, the result should be consistent with the substantive law giving rise to the claim. Today, however, the Court never pauses to consider the law of usury. Since Mississippi law condemns the aggregation of usury claims,[15] the Court's concern for compensation of putative class members in this case is at best misplaced and at worst inconsistent with the command of the Rules Enabling Act.[16]

The Court's concern for putative class members would be more telling in a more appropriate case. A pattern of forced settlement could indeed waste judicial resources on the litigation of successive suits by members of the putative class. I do not doubt that the consequent problems of judicial administration would be real. But these problems can and should be addressed by measures short of undercutting the law of mootness, as the Court seems to have done today. The first step should be the authorization of interlocutory appeals from the denial of class certification in appropriate circumstances.[17]

---

[15] *Liddell* v. *Litton Systems, Inc.*, 300 So. 2d 455 (1974) (rejecting borrower's class action); *Fry* v. *Layton*, 191 Miss. 17, 2 So. 2d 561 (1941). Petitioner is a national bank, and its alleged failure to comply with Mississippi's interest limits would violate the National Bank Act. 12 U. S. C. § 85. But I do not understand that the National Bank Act displaces state policy disfavoring the aggregation of usury claims. A primary purpose of that Act is to protect national banks from discriminatory treatment or undue penalties that may be imposed by state law. See 12 U. S. C. § 86.

[16] The Act provides that rules of procedure promulgated by this Court "shall not . . . enlarge or modify any substantive right." 28 U. S. C. § 2072. See *American Pipe & Construction Co.* v. *Utah*, 414 U. S. 538, 557–558 (1974); Developments in the Law—Class Actions, 89 Harv. L. Rev. 1318, 1358–1359 (1976). See generally Landers, Of Legalized Blackmail and Legalized Theft: Consumer Class Actions and the Substance-Procedure Dilemma, 47 S. Cal. L. Rev. 842 (1974).

[17] In *Coopers & Lybrand* v. *Livesay*, 437 U. S. 463 (1978), this Court held that the denial of class certification is not a "final decision" appeal-

District courts already are empowered by 28 U. S. C. § 1292 (b) to certify such appeals when they involve certain controlling questions of law. In many cases, a class-action defendant undoubtedly would forgo the opportunity to settle with an individual plaintiff in order to obtain an immediate and final determination of the class certification question on appeal.

Where a defendant does attempt to moot a class action by forced settlement, the district court is not powerless. In at least some circumstances, it may require that putative class members receive some sort of notice and an opportunity to intervene within the appeal period. Rule 23 (d)(2). The availability of such measures could be a significant deterrent to the deliberate mooting of class actions. Indeed, district court management of the problem by measures tailored to the case at hand may well be preferable to the Court's open-ended approval of appeals in all circumstances. To the extent interlocutory appeals are unavailable or managerial powers are lacking, it is for Congress—not this Court—to correct the deficiency.[18]

## B

Since a court is limited to the decision of the case before it, judicially fashioned "solutions" to legislative problems often

able as of right under 28 U. S. C. § 1291. We relied in that case on the dangers of "indiscriminate" interlocutory review. 437 U. S., at 474. Although *Coopers & Lybrand* now prevents review in cases in which it would be desirable, Congress may remedy the problem by appropriate legislation.

[18] Congress currently has before it a bill that attempts to remedy the difficulties infecting this troubled area. H. R. 5103, 96th Cong., 1st Sess. (1979). The bill, supported by the Department of Justice, proposes to bypass the Rules Enabling Act problem, see n. 16, *supra*, and to eliminate some of the problems of claims too small to justify individual lawsuits, by creating a new federal right of action for damages. The bill provides for the enforcement of this right in some instances through actions brought in the name of the United States. The bill also authorizes interlocutory appeals from the grant or denial of the ruling that will replace class certification under the proposed procedures.

are attended by unfortunate practical consequences of their own. Today's holding is no exception. On remand, respondents will serve as "quasi-class representatives" solely for the purpose of obtaining class certification. Since they can gain nothing more from the action, their participation can be intended only to benefit counsel and the members of a putative class who have indicated no interest in the claims asserted in this case. Respondents serve on their own motion—if indeed they serve at all.[19] Since no court has certified the class, there has been no considered determination that respondents will fairly and adequately represent its members. Nothing in Rule 23 authorizes this novel procedure, and the requirements of the Rule are not easily adapted to it. Are respondents members of the class they seek to represent? See *East Texas Motor Freight* v. *Rodriguez,* 431 U. S. 395, 403–404 (1977). Are their currently nonexistent claims "typical of the claims . . . of the class" within the meaning of Rule 23 (a)(3)?[20]

The Court's holding well may prevent future "forced settlements" of class-action litigation. Thus, the difficulties faced by the District Court on remand in this case may not arise again in precisely analogous circumstances. But today's result also authorizes appeals by putative class representatives who have litigated and prevailed on the merits of their individual claims. If the order denying class certification is reversed in that situation, the named plaintiffs on remand will have no more continuing relationship to the putative class than respondents have here. A remand for certification could also lead to "one-way intervention" in direct violation of Rule 23. See *supra,* at 354, and n. 14. These tensions,

[19] As noted *supra,* at 346, respondents took no appeal in their own names. One would think that this candid disclaimer of personal interest would destroy the foundation upon which the Court predicates Art. III jurisdiction. *Ante,* at 336; see *supra,* at 349.

[20] The District Court properly may conclude on remand that respondents, for these or other reasons, cannot adequately represent the class.

arising from the express terms of the Rule, undermine the Court's conclusion that the policies underlying Rule 23 dictate the result reached today.

## III

In sum, the Court's attempted solution to the problem of forced settlements in consumer class actions departs from settled principles of Art. III jurisprudence.[21] It unneces-

---

[21] MR. JUSTICE STEVENS states in his concurring opinion that all persons alleged to be members of a putative class "should be considered parties to the case or controversy at least for the limited purpose" of Art. III, and that they "remain parties until a final determination has been made that the action may not be maintained as a class action." *Ante,* at 342. This novel view apparently derives from early cases in which the Court referred to class members who would be bound by a judgment as "absent parties," *Hansberry* v. *Lee,* 311 U. S. 32, 42 (1940), or "parties in interest," *Smith* v. *Swormstedt,* 16 How. 288, 303 (1854). *Ante,* at 343, n. 3. But these cases were decided before certification was established as the method by which a class achieves judicial recognition. Under Rule 23, the members of a putative class will not be bound by a judgment unless a proper certification order is entered. That they may be "interested parties" before that time does not make them parties to the litigation in any sense, as this Court has recognized. In *Indianapolis School Comm'rs* v. *Jacobs,* 420 U. S. 128 (1975), the Court held that an oral certification order was insufficient to identify the interests of absent class members for Art. III purposes. The result hardly could be different when the class has not been identified at all. See also *Memphis Light, Gas & Water Div.* v. *Craft,* 436 U. S. 1, 8 (1978); *Baxter* v. *Palmigiano,* 425 U. S. 308, 310–311, n. 1 (1976); *Weinstein* v. *Bradford,* 423 U. S. 147 (1975); *Pasadena City Bd. of Education* v. *Spangler,* 427 U. S. 424, 430 (1976).

MR. JUSTICE STEVENS indicates that unnamed members of an uncertified class may be "present" as parties for some purposes and not for others. No authority is cited for such selective "presence" in an action. Nor is any explanation offered as to how a court is to determine when these unidentified "parties" are present. If their presence is to be limited to the satisfaction of the Art. III case-or-controversy requirement, then the rule of party status would have no content apart from Art. III and could only be described as a legal fiction. If, on the other hand, the proposed rule is to apply outside the Art. III context, it may have troublesome and far-reaching implications that could prejudice the bringing of

sarily creates significant problems in the administration of Rule 23. And it may work a serious injustice in this case.[22] I would vacate the judgment of the Court of Appeals and remand with instructions to dismiss the appeal as moot.

---

class actions. Presumably, a purpose of the rule of party status would be to assure that satisfaction of the claims of named parties would not terminate the litigation. Nor could the rights of unnamed parties be extinguished by the failure of the named parties to appeal. Thus, if the rule proposed by MR. JUSTICE STEVENS is to accomplish its purpose, I suppose that a fiduciary duty must be imposed upon named parties to continue the litigation where—as here—the unnamed parties remain unidentified and fail to intervene. As fiduciaries, would the named parties be required not only to continue to litigate, but also to assume personal responsibility for costs and attorney's fees if the case ultimately is lost? Would responsible litigants be willing to file class actions if they thereby assumed such long-term fiduciary obligations? These and like questions are substantial. They are not resolved by Rule 23. I believe they merit careful study by Congress before this Court—perhaps unwittingly—creates a major category of clientless litigation unique in our system.

[22] The Court's resurrection of this dead controversy may result in irreparable injury to innocent parties, as well as to the petitioner bank. When the District Court denied certification on September 29, 1975, it assigned as one of its reasons the possible "destruction of the [petitioner] bank" by damages then alleged to total $12 million and now potentially augmented by the accrual of interest. App. 47; see ante, at 329, n. 2. The possible destruction of the bank is irrelevant to the jurisdictional issue, but serious indeed to depositors, stockholders, and the community served. It is said that this is necessary to redress injuries possibly suffered by members of the putative class. Yet, no such person has come forward in the nearly nine years that have passed since this action was filed. Indeed, the challenged conduct was authorized by statute almost six years ago. As the District Court may be called upon to determine whether the equitable doctrine of "relation back" permits it to toll the statute of limitations on remand, ante, at 330, n. 3, it will hardly be inappropriate for that court to consider the equities on both sides. In the circumstances presented, the District Court may well see no reason to exercise its equitable discretion in favor of putative class members who have slept on their rights these many years.