In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 19-1141

JEROME SENEGAL, *et al.*, on behalf of a class,

*Plaintiffs-Appellees*,

*v.*

JPMORGAN CHASE BANK, N.A.,

*Defendant-Appellee*.

Appeal of:
    MATTHEW BRAXTON, *et al.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 C 6006 — **Manish S. Shah**, *Judge*.

———————————

ARGUED SEPTEMBER 6, 2019 — DECIDED SEPTEMBER 26, 2019

———————————

Before EASTERBROOK, KANNE, and BRENNAN, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The district court certified a class of African-American financial advisers who worked at JPMorgan Chase Bank between 2013 and 2018. This class, which has about 250 members, alleged that the Bank treated them less favorably than equivalent advisers of other races

or backgrounds. The parties filed a settlement together with the complaint. The agreement, a product of 16 months' presuit negotiations, includes a payment of $19.5 million for the benefit of class members who do not opt out, plus changes in the Bank's operations and a fund of about $4.5 million to cover the costs of those changes and establish a reserve for unexpected events. The order certifying the class relied on Fed. R. Civ. P. 23(b)(2) with respect to the operational changes and Rule 23(b)(3) with respect to the proposed payments to class members.

Members are entitled to opt out of Rule 23(b)(3) classes and pursue their claims individually. But they cannot opt out of Rule 23(b)(2) classes, for the relief is indivisible. It would not be possible (or sensible) for the Bank to use different employment practices for different financial advisers who do the same tasks in the same places. The notice to class members told them this and added that anyone who opted out of the (b)(3) relief would still receive the benefit of the changes implemented under (b)(2) while retaining a right to sue the Bank individually. Eleven people opted out.

The opt-outs asked the district court to create a subclass limited to them. The judge declined—not simply because 11 is too few to be a subclass, but also because these 11 voluntarily left the class. The judge also did not invite any objections the opt-outs had to the (b)(2) relief. The notice to class members itself told potential opt-outs that taking this step would eliminate their right to object. In order to object, the notice said, a member had to remain in the class for all purposes. The district judge approved the settlement, and eight of the eleven people who opted out have appealed.

They present several arguments. They contend, for ex-
ample, that the judge did not make the findings required by
Rule 23 for a settlement class, see *Amchem Products, Inc. v.
Windsor*, 521 U.S. 591 (1997), and that because they are still in
the class—members just can't opt out of (b)(2) classes—the
judge should have listened to their protests despite what the
notice said. They maintain that the notice did not provide
enough information for them to make a reasoned decision
whether to opt out of the financial portion of the relief. They
also assert that the settlement provides too much ($4.5 mil-
lion) to implement the new employment practices and not
enough ($19.5 million) for distribution to class members. But
they did not either object to the language of the notice or ask
for reinstatement as full class members. And this leads the
appellees (the Bank plus the class representatives) to con-
tend that they lack "standing to appeal."

We don't get the standing point. Appellants are members
of the (b)(2) class, and those provisions of the consent decree
will affect them at work even if they are free to seek damag-
es independently. Cf. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct.
663 (2016) (a litigant who rejects an opportunity to settle re-
tains standing). They assert that they have been injured—
and failure to prove injury, like failure to establish one's le-
gal position, does not retroactively deprive the litigant of
standing. See *Bell v. Hood*, 327 U.S. 678 (1946).

Appellants' problem is not standing but the nature of the
arguments they present. They might say, for example, that
different prospective relief in the (b)(2) portion of the reme-
dy would have been better for them. They might say that, if
the notice had been worded differently, they would not have
opted out—and that they want to return to the class if they

get appellate relief. But they do not make such arguments. Indeed, they have not seriously tried to explain how they are hurt by the district court's decisions or how they could be helped by anything this court could do.

Take the argument that the district court did not make the findings required by *Amchem*. Could a remand with instructions to make those findings assist our eight appellants? They don't explain how. If the judge makes the findings, they will be in the same position as they are now. If the judge concludes that the required findings cannot be made, then they will be worse off, because they will lose the benefit of the (b)(2) relief.

Or take the argument that too much money has been allocated to support the prospective relief and not enough directly to the financial advisers. Suppose that we were to agree and order the district judge to move $2 million from the (b)(2) portion of the remedy to the (b)(3) portion. Then appellants would be worse off. They would lose the benefit of those funds without getting anything in exchange—for the transferred money would be paid to the employees who stayed in the (b)(3) class, as appellants did not. They can't complain about this or any other element of the (b)(3) aspect of this class, because they have opted out. See *In re Brand Name Prescription Drugs Antitrust Litigation*, 115 F.3d 456 (7th Cir. 1997).

Finally, take the argument that the notice should not have said that people who opt out of the (b)(3) relief cannot complain about the (b)(2) relief. Suppose appellants had objected distinctly in the district court (which they didn't). What good would changing this language, and entertaining their objections to prospective relief, have done them? We

have listened to every objection they care to make about the (b)(2) relief, and they have not articulated any contention that, if accepted, would make them better off. They did not lose anything when the district judge implemented the statements in the notice.

Only persons aggrieved by a judgment may appeal from it. See, e.g., *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 333 (1980). These objectors are not aggrieved by the decisions of which they complain, so the appeal is

DISMISSED.