**HCA HEALTH SERVICES OF VIRGINIA, t/a Henrico Doctors' Hospital; Richmond Community Hospital, a Virginia non-stock Corporation; Richmond Eye and Ear Hospital, a Virginia non-stock Corporation, Plaintiffs–Appellants,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, a New York Corporation; MetLife Healthcare Management Corporation, a Delaware Corporation, Defendants–Appellees.**

**HCA HEALTH SERVICES OF VIRGINIA, t/a Henrico Doctors' Hospital; Richmond Community Hospital, a Virginia non-stock Corporation; Richmond Eye and Ear Hospital, a Virginia non-stock Corporation, Plaintiffs–Appellees,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, a New York Corporation; MetLife Healthcare Management Corporation, a Delaware Corporation, Defendants–Appellants.**

Nos. 91–2606, 91–2609.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 2, 1991.

Decided Feb. 24, 1992.

---

William R. Rakes and Gregory J. Haley, Gentry, Locke, Rakes & Moore, Roanoke, Va., argued, for HCA Health Services of Virginia, et al.

Robert F. Callahan, New York City, argued (William R. Toppeta, on brief), for Metropolitan Life Ins. Co., et al.

Before ERVIN, Chief Judge, TILLEY, District Judge for the Middle District of North Carolina, sitting by designation, and HERLONG, District Judge for the District of South Carolina, sitting by designation.

## OPINION

ERVIN, Chief Judge:

This case concerns a motion by appellants, HCA Health Services of Virginia, Inc., t/a Henrico Doctors' Hospital, Richmond Community Hospital, Inc., and Richmond Eye and Ear Hospital (hereinafter the "Hospitals"), to withdraw their appeal against Metropolitan Life Insurance Company and MetLife Healthcare Management Corp. (hereinafter "Metropolitan"). The district court held that Metropolitan's establishment of a Preferred Provider Organization ("PPO") of selected hospitals offering discounted rates to Metropolitan

group customers in Richmond, Virginia did not violate a portion of Virginia's Insurance Code regulating insurance company-established PPO's. 752 F.Supp. 202. The Hospitals, three hospitals excluded from the PPO, appealed that ruling, alleging that Metropolitan's actions violated the statute. Metropolitan cross-appealed, arguing that the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001–1461 (ERISA), preempts the Virginia statute. The Hospitals moved to withdraw their appeal, and Metropolitan contested the motion. We grant the Hospitals' motion.

## I

Metropolitan established a PPO in Richmond in 1988. A PPO is a group of selected health care providers that agrees to charge lower rates on services in exchange for attracting a greater number of patients. As the district court found:

4. The exclusion of some providers is a necessary prerequisite of a limited provider network. It is by limiting the number and types of providers included in a PPO that an insurer is able to implement cost reductions in services for health beneficiaries.

5. The establishment of PPO's has helped to stem the tide of steadily increasing health care costs in this country.

At 204. Metropolitan, on its own initiative, contacted hospitals in Richmond to become part of its PPO. Metropolitan also contacted its two Richmond employer-customers about incorporating the PPO into their employee benefit programs. Both Reynolds Metals Co. and Sovran Financial Corporation subsequently did so.

Metropolitan selected the hospitals to participate in its PPO by using internally developed criteria:

geographic location relative to the prospective employee population; range of services; cost efficiency; historical utilization [by the prospective employee population]; willingness to comply with

medical management and utilization review; anticipated level of interest in the PPO by, and strength of, the medical staff of the hospital; and price.

J.A. 82. Metropolitan split Richmond into four, later three, areas, and contacted hospitals it was interested in including in the PPO. These hospitals, generally two to an area, then competed head-to-head, primarily on which would charge Metropolitan the lower price. The plaintiffs at bar are three hospitals that were excluded from participation in the PPO. One, Henrico Doctors' Hospital ("Henrico"), is owned by Hospital Corporation of America, which also owns two other Richmond hospitals that were included in the PPO plan. Henrico participated in the selection process, surviving the first round of Metropolitan's cuts, but ultimately could not match a competing hospital's offer. The second and third plaintiff hospitals, Richmond Eye and Ear Hospital ("Richmond Eye and Ear") and Richmond Community Hospital, Inc. ("Richmond Community"), did not survive the first round—the former because as a specialty hospital it does not provide the full range of services Metropolitan desired, the latter in part because it has not been sufficiently used by potential employee participants.

The provision of the Virginia Insurance Code in controversy is Virginia Code Section 38.2–3407(B). Section A allows insurers to

offer or administer a health benefit program under which the insurer or insurers may offer preferred provider policies or contracts that limit the numbers and types of providers of health care services eligible for payment as preferred providers.

VA.CODE ANN. § 38.2–3407(A). The Hospitals thus do not argue that Metropolitan was prohibited from setting up a PPO; they argue instead that Metropolitan improperly selected the participating hospitals for it, pursuant to section B:

Any such insurer shall establish terms and conditions that shall be met by a hospital . . . to qualify for payment as a

preferred provider.... These terms and conditions shall not discriminate unreasonably against or among such health care providers. No hospital ... willing to meet the terms and conditions offered to it or him shall be excluded. Neither differences in prices among hospitals ... produced by a process of individual negotiations with providers or based on market conditions, or price differences among providers in different geographical areas, shall be deemed unreasonable discrimination.

VA.CODE ANN. § 38.2–3407(B).

The Hospitals alleged both in this court and below that Metropolitan's internal selection criteria were not "terms and conditions" under the statute; that the selection criteria "discriminate[d] unreasonably" against specialty hospitals, community hospitals, and those located in the same geographical area as a selected preferred provider; and that such discriminated-against providers who were "willing to meet the terms and conditions" should not have been excluded. Metropolitan pleaded ERISA preemption as an affirmative defense and requested declaratory relief based on ERISA in its prayer for relief.

Following a bench trial, the district court rejected the Hospitals' claims by applying the Virginia statute. First, according to the court, Metropolitan's selection criteria were "the functional equivalent" of terms and conditions. Second, Metropolitan's division of Richmond into service areas, its exclusion from consideration of specialty hospitals or hospitals that have not been heavily utilized by Metropolitan's beneficiaries, and its exclusion of a hospital that lost in head-to-head price competition did not constitute unreasonable discrimination among providers. Third, the court concluded that its "finding that Metropolitan's selection criteria constitute terms and conditions which do not unreasonably discriminate among providers renders the laches, unclean hands, and ERISA preemption defenses asserted by the defendant moot." At 208.

The Hospitals timely appealed the dismissal of the complaint and Metropolitan cross-appealed the ERISA preemption issue. Two days before oral argument, the Hospitals moved to withdraw their appeal, and Metropolitan contested the motion.

## II

An appellant's motion to voluntarily dismiss its own appeal is generally granted, although courts of appeal have the discretionary authority not to dismiss the case in appropriate circumstances. *United States v. State of Wash., Dep't of Fisheries*, 573 F.2d 1117, 1118 (9th Cir. 1978). Here, however, Metropolitan cross-appealed the district court's judgment. Thus if Metropolitan's appeal independently grants it standing, this court may not dismiss the case. A party must be "aggrieved" by a district court judgment or order in order to have standing to appeal. *Deposit Guar. Nat'l. Bank v. Roper*, 445 U.S. 326, 333, 100 S.Ct. 1166, 1171, 63 L.Ed.2d 427 (1980). Generally, a prevailing party is not aggrieved by the judgment and may not appeal on the ground that the trial court based its decision on a reason other than one the party may have wished. *See, e.g., Perez v. Ledesma*, 401 U.S. 82, 87 n. 3, 91 S.Ct. 674, 678 n. 3, 27 L.Ed.2d 701 (1971). However, a prevailing party may appeal an adverse ruling collateral to the judgment on the merits "so long as that party retains a stake in the appeal satisfying the requirements of Art. III." *Deposit Guar.*, 445 U.S. at 334, 100 S.Ct. at 1171.

Metropolitan lacks standing to prosecute its cross-appeal, since it is aggrieved neither in its relationship with the parties to this case nor with respect to any other potential future litigant. First, Metropolitan is not aggrieved against the Hospitals. As this court has stated, "the party 'aggrieved' concept must be given a practical rather than hypertechnical meaning." *Department of Defense, Office of Dependent Sch. v. Federal Labor Relations Auth.*, 879 F.2d 1220, 1222 (4th Cir.1989) (citing *Aetna Casualty and Sur. Co. v. Cunning-*

*ham*, 224 F.2d 478 (5th Cir.1955)). In *Aetna*, Aetna was aggrieved in its relationship with its party opponent even though, by prevailing on one claim, it recovered the full amount of money it sought at trial. The court allowed Aetna to appeal on a second alternative claim that would give Aetna greater rights against the opposing party (the party's debts would be dischargeable in bankruptcy under the second claim). 224 F.2d at 480–81. In the case at bar, Metropolitan argues that the district court should have reached the ERISA preemption issue prior to interpreting the Virginia statute. Because the district court decided only that Metropolitan met the requirements of the Virginia statute at the time of this suit, this argument runs, the Hospitals can potentially bring a similar suit against Metropolitan at a later time; had the court correctly reached the ERISA question first and decided that ERISA did preempt the portion of the statute at issue, then the Hospitals would have been precluded from bringing the later suit. Metropolitan argues that this possibility of a later suit by the Hospitals cannot be discounted, and because of the considerable expenses Metropolitan has incurred in defending this case and prosecuting its appeal, it suffices to make Metropolitan an aggrieved party able to bring its cross-appeal action.

This potential later suit is the decision's only possible effect adverse to Metropolitan with respect to the plaintiff Hospitals. We do not analyze this claim of grievance in the context of the parties alone, but rather in the second manner in which a prevailing party can be aggrieved by a decision, namely, through injury to its legal position *vis-a-vis* any potential litigant.

■ Metropolitan cannot, however, show that the district court decision adversely affected its legal rights against the plaintiff hospitals or against any other litigant. An injury in fact is required for a party to be aggrieved for purposes of being able to appeal; the party's desire for better precedent does not by itself confer standing to appeal. *See Telecommunications Research and Action Ctr. v. FCC*, 917 F.2d 585, 588 (D.C.Cir.1990); *United States v. State of Wash., Dep't of Fisheries*, 573 F.2d 1117, 1118 (9th Cir.1978). The only injury Metropolitan can claim is indeed the lack of better precedent. The court below did not reach the ERISA preemption argument and did not decide it in any way adverse to Metropolitan. Had the court held instead that ERISA does not preempt the Virginia statute but that Metropolitan prevails in any case on the statute's application, then this case would parallel those cases in which a prevailing party has been permitted to appeal because of *res judicata* injury to its future legal rights. *See Electrical Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242, 59 S.Ct. 860, 861, 83 L.Ed. 1263 (1939) (appeal by prevailing party proper because, after ruling there had been no patent infringement, district court erroneously ruled on validity of patent); *Department of Defense, Office of Dependent Sch. v. Federal Labor Relations Auth.*, 879 F.2d 1220, 1221–22 (4th Cir.1989) (Department of Defense, Office of Dependent Schools (DODDS) was "aggrieved" for appeal purposes when FLRA decided in favor of DODDS in union's appeal of arbitration decision while also holding that the Act did not allow head of DODDS to review the arbitration decision); *see also TranSouth Fin. Corp. v. Johnson*, 931 F.2d 1505, 1506–07 n. 2 (11th Cir.1991) (district court's denial of attorney's fees to prevailing party held subject to appeal despite lack of opposition and *de minimis* amount because decision adversely determined its future rights on issue); *International Bhd. of Elec. Workers v. ICC*, 862 F.2d 330, 334 (D.C.Cir.1988) (because agency's holding that it had jurisdiction to consider case adversely affected union's rights even though agency's disposition on the merits was in favor of the union, union had standing to appeal decision). Those cases are not this case, however. Here, by contrast, the court's holding has no *res judicata* effect adverse to Metropolitan, even though the court wrongly failed to address

the ERISA claim first.[1] Metropolitan's sole grievance is the hypothetical possibility that it will be sued on this issue sometime in the future.[2] At that time, however, Metropolitan can properly raise its ERISA preemption arguments, and a future court's receptivity to these arguments will not be affected in any way by the result of this case. *See Manufacturers Credit Corp. v. SEC*, 395 F.2d 833, 847 (3d Cir. 1968) (district court's granting of alternative rather than primary relief did not harm appellant because decision did not affect appellant's ability to assert right sought in primary relief in future).

### III

Metropolitan lacks standing to prosecute this appeal because it is not aggrieved against the Hospitals in this case or, through injury to its legal rights, against any potential litigant.[3] Plaintiff hospitals' motion to withdraw their appeal is therefore granted and this action is

DISMISSED.

TILLEY, District Judge, concurring:

I concur in the well reasoned opinion that Metropolitan is not an aggrieved party and that the appellants' motion to dismiss should be allowed. While I do not believe that Footnote 1 constitutes a holding that there are absolutely no circumstances when a district court may dismiss a case before resolving the ERISA preemption issue, I write additionally to express my reservation about the possibility of such a reading.

Although ERISA preemption is indeed broad and sweeping, *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983), the methodology employed by the district courts in making a preemption inquiry is normally the same whether the case arises under ERISA or under the Labor Management Relations Act, § 301. In the former, the court must first analyze the elements of the particular state law claim in order to determine if the state law "relates to" a specific pension or welfare benefit plan provision, *see Washington v. Union Carbide Corporation*, 870 F.2d 957, 961–962 (4th Cir.1989), *cf. Arkansas Blue Cross and Blue Shield v. St. Mary's Hospital, Inc.*, 947 F.2d 1341 (8th Cir.1991); in the latter, the court must initially analyze the elements of the particular state law claim in

1. The District Court erred in interpreting the Virginia statute before deciding if it was preempted by ERISA. If ERISA preempts a state law, that is the end of the matter; the "case will not permit us to resolve the dispute about the proper interpretation of [state] law." *PPG Indus. Pension Plan A (CIO) v. Crews*, 902 F.2d 1148, 1150 (4th Cir.1990); *accord Thompson v. Talquin Bldg. Prod. Co.*, 928 F.2d 649, 652 n. 2 (4th Cir.1991).

2. It is unlikely, in any case, that any of the three plaintiff hospitals would sue Metropolitan on this issue again. As Metropolitan implicitly conceded in its supplemental brief, Richmond Eye and Ear and Richmond Community are entirely precluded from suing Metropolitan under the Virginia statute because of the decision below. According to the district court's judgment, these hospitals were properly excluded from consideration because, respectively, they were too specialized in the services they offered and too underutilized by Metropolitan's potential client population. At 205. Therefore, only Henrico Doctors' Hospital might be in a posi-

tion to sue again. However, the district court's decision allows Metropolitan to divide Richmond into selection zones and further allows it to conduct head-to-head price competition in each zone among those hospitals that meet its terms and conditions. Henrico could sue Metropolitan under the statute only if it managed, as it could not before, to offer lower prices than the competitor in its zone, St. Mary's Hospital. It is unlikely that Henrico would soon be in this position, because, as the district court found, St. Mary's is a nonprofit hospital and is more cost-efficient than Henrico. At 206. Even if Henrico could underprice St. Mary's in the future, it is not clear that Metropolitan would then object to Henrico's entrance into the PPO program. Henrico is owned by Hospital Corporation of America, which also owns two hospitals that are in the PPO network, indicating that it is unlikely that Metropolitan's grounds for rejecting Henrico were in any way pretextual.

3. Because we hold that Metropolitan lacks standing, we do not reach the issues of mootness or the Declaratory Judgment Act raised by Metropolitan in this case.

order to determine if application of the state law would require the interpretation of a specific collective bargaining agreement. *Washington v. Union Carbide Corp., supra,* at 959. If, in making the initial analysis of a state law claim, it should become apparent that the claim has no validity in either fact or law, I am unable to discern why a district court would have the discretion to dismiss on that basis before reaching the ultimate question of preemption in a § 301 action, *Washington v. Union Carbide Corporation, supra,* at 960–961; and *Childers v. Chesapeake & Potomac Telephone Co.,* 881 F.2d 1259 (4th Cir.1989), but have the mandate in an ERISA action to forge ahead with what is often a time consuming, complex (*see Arkansas Blue Cross, supra*), and—by that time—unnecessary issue. Not only would that require additional time at the trial court level, but also at the appellate level since, as we recognize in our opinion, the loser of the preemption question becomes an aggrieved party for purposes of appeal even though it may have been the ultimate winner in the district court.

Because this issue was not thoroughly briefed nor argued by the parties and is not necessary to address in our disposition of this appeal, I believe its full resolution is better left for another case and another day.