**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JACQUELINE PATRICE MOORE; STEVEN
COMER MOORE, JR.; MELISSA FOX
MOORE,
Plaintiffs-Appellants,

and

PEGGY F. MOORE,
Plaintiff,

No. 98-2243

v.

DAVID R. MOORE, in his official
capacity and as agent for Integon
Insurance Company, Incorporated;
SECURITY LIFE AND TRUST INSURANCE
COMPANY,
Defendants-Appellees.

JACQUELINE PATRICE MOORE; STEVEN
COMER MOORE, JR.; MELISSA FOX
MOORE,
Plaintiffs-Appellees,

and

PEGGY F. MOORE,

Plaintiff,

No. 98-2349

v.

SECURITY LIFE AND TRUST INSURANCE
COMPANY,
Defendant-Appellant,

and

DAVID R. MOORE, in his official
capacity and as agent for Integon
Insurance Company, Incorporated,
<u>Defendant.</u>

Appeals from the United States District Court
for the Western District of Virginia, at Danville.
Jackson L. Kiser, Senior District Judge.
(CA-97-32-D)

Argued: November 30, 1999

Decided: January 19, 2000

Before MURNAGHAN, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Barbara Rubin Hudson, Danville, Virginia, for Appel-
lants. James A. L. Daniel, DANIEL, VAUGHAN, MEDLEY & SMI-
THERMAN, P.C., Danville, Virginia; Glenn Lee Berger, BERGER &
THORNHILL, Altavista, Virginia, for Appellees. **ON BRIEF:**
Michael E. Hastings, DANIEL, VAUGHAN, MEDLEY & SMI-
THERMAN, P.C., Danville, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiffs appeal the district court's grant of summary judgment to defendants in this diversity fraud action, and defendant cross-appeals. For the reasons that follow, we affirm.

I.

On August 15, 1988, Peggy Moore ("Peggy") and decedent Steven Moore Sr. ("decedent") purchased a $250,000 life insurance policy on decedent's life from defendant Integon Life Insurance Corporation ("Integon"),**1** through decedent's brother, defendant David Moore ("David"), an Integon agent. In 1993, decedent made his three children -- plaintiffs Jacqueline Moore, Steven Moore Jr., and Melissa Moore -- equal beneficiaries of this policy. The following year, Peggy and decedent entered into a Property Settlement Agreement, incorporated into their divorce decree, in which the decedent "agree[d] to maintain the life insurance in the face amount of $200,000.00 with New York Life Insurance, naming the children, JACKIE MOORE, STEVEN MOORE, and MELISSA MOORE, as beneficiaries, until each child at least reaches the age of 25 years." J.A. 47.**2**

One year later, decedent decreased the amounts plaintiffs would have received under the policy to $66,667 each, with the remainder to his new wife. In February of 1996, decedent again changed the beneficiary amounts, leaving only $10,000 to plaintiff Jacqueline and $66,667 each to plaintiffs Steven Jr. and Melissa, with the remainder to decedent's new wife.

In February 1996, Peggy filed a petition for rule to show cause in state court to compel decedent to produce evidence, per the Property

_____

**1** Integon now does business under the name of Security Life and Trust Insurance Company.
**2** The parties do not dispute that the reference to "New York Life Insurance" (rather than Integon) was a mutual mistake.

Settlement Agreement, that he had maintained life insurance for plaintiffs in the amounts specified in the Agreement. On March 7, 1996, David responded to a request from decedent's attorney with a letter stating that "[b]eneficiaries of the life insurance policy are the insured's three (3) children[:] Jacqueline P. Moore, Steven C. Moore, Jr. and Melissa F. Moore." J.A. 213. After receiving this letter, Peggy did not pursue the rule to show cause.

In November 1996, having earlier been diagnosed with cancer, decedent exercised the accelerated-death-benefit ("ADB") rider in his life insurance contract, which obligated Integon to pay fifty percent of the value of the policy (approximately $126,000) to decedent. Decedent then reinstated the plaintiffs as full and exclusive beneficiaries, in equal shares, of the amount remaining in the policy (approximately $126,000). Decedent died on January 22, 1997.

Plaintiffs brought the present action in May of 1997. After Peggy was dismissed as a plaintiff and after other counts in the complaint were dismissed or withdrawn, the amended complaint stated a single count for fraud. On July 23, 1998, the district court granted defendants' motions for summary judgment.

II.

As the district court correctly found, only two events could, as a matter of law, support plaintiffs' fraud complaint: (1) David's March 7, 1996 letter; and (2) David's assistance in decedent's exercise of the ADB rider. We hold that neither supports a claim of fraud that could survive defendants' motions for summary judgment, because neither could satisfy each of the six elements of fraud under Virginia law. See Evaluation Research Corp. v. Alequin, 439 S.E.2d 387, 390 (Va. 1994) (citing cases) ("One who advances a cause of action for actual fraud bears the burden of proving by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled."). The last element has been construed to require proof of proximate causation of the alleged damages. See Murray v. Hadid , 385 S.E.2d 898, 903-04 (Va. 1989).

4

As to the March 7, 1996 letter, the alleged misrepresentation therein could not, as a matter of law, have proximately caused the damages allegedly suffered by plaintiffs. As to that letter, plaintiffs contend that the failure to identify decedent's new wife as a fourth beneficiary at the same time that the letter stated that the beneficiaries "are" the three plaintiffs constituted a misrepresentation of a material fact. The damages alleged by the plaintiffs were the payout of only $126,000, rather than $250,000, in insurance proceeds upon their father's death. This shortfall was indisputably caused by decedent's exercise of the ADB rider. Misrepresenting the existence of a fourth beneficiary had nothing to do with the exercise of the ADB rider. In fact, at the time of the $126,000 payout, there was no longer a fourth beneficiary, the plaintiffs having been restored to their prior status as the exclusive beneficiaries. Therefore, the alleged misrepresentation in the March 7, 1996 letter could not have proximately caused the damages alleged.[3]

As to the assistance David rendered the decedent in the course of the exercise of the ADB rider, not only did David make no affirmative misrepresentations about such assistance, but he was under no duty to disclose his assistance to the plaintiffs. The terms of the insurance policy gave rise to no such duty, because plaintiffs did not fall within either category of persons whose consent was required for the exercise of the rider, and because Integon never sought plaintiffs' consent.[4] And the March 7, 1996 letter created no such duty, because

_____

[3] Admittedly, a reasonable jury could conclude that Peggy and/or the plaintiffs would have acted differently than they did, had they timely discovered this alleged misrepresentation. For example, a reasonable jury could have concluded that the plaintiffs would have obtained an order from the state court enforcing the Property Settlement Agreement. However, without engaging in the kind of speculation foreclosed by the proximate cause requirement, we cannot conclude that a reasonable jury could find that the plaintiffs would have successfully taken measures to render the ADB rider inoperative.

[4] The ADB rider provided in pertinent part:

> When a request is received to accelerate the benefits under the rider, approval is subject to the following: [. ..]
>
> --A consent form to be completed by an assignee or irrevocable beneficiary for approval of payout.

5

the letter clearly was "a response to a one-time request for information at a discrete point in time." J.A. 277."[P]laintiffs have not pointed to any facts which indicate that David Moore meant [or pur-

ported] to assume a permanent role as an information conduit between Steven and Peggy Moore." Id.**5**

For the reasons stated, the judgment of the district court is affirmed.

AFFIRMED
_____

> --<u>If requested by Integon</u>, a consent form must be signed from any of the following:
>
> --a spouse;
>
> --the insured under this rider;
>
> --any beneficiary (other than as stated above); and/or
>
> --any other person if, in our discretion, such person's consent is needed to protect our interest.

J.A. 248 (emphases added).

**5** Because no aspect of the judgment below was adverse to Integon, we decline to consider Integon's cross-appeal. <u>See Deposit Guaranty Nat'l Bank</u> v. <u>Robert</u>, 445 U.S. 326, 333 (1980) ("Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom.").