

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-10-2004

# IPSCO Steel v. Blaine Constr Corp

Precedential or Non-Precedential: Precedential

Docket No. 03-3109

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"IPSCO Steel v. Blaine Constr Corp" (2004). *2004 Decisions.* Paper 557.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/557

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF
APPEALS FOR THE THIRD CIRCUIT
_____

No. 03-3109
_____

IPSCO STEEL (ALABAMA), INC., an
Alabama Corporation; IPSCO
CONSTRUCTION, INC., an Alabama
Corporation; KVAERNER U.S. INC., a
Delaware Corporation

v.

BLAINE CONSTRUCTION
CORPORATION, a Tennessee
Corporation.

*Lexington Insurance Company,
Appellant
*(Pursuant to F.R.A.P. 12(a))

(D.C. Civil Action No. 99-cv-02055)

_____

No. 03-3110
_____

BLAINE CONSTRUCTION
CORPORATION, a Tennessee
Corporation

v.

IPSCO CONSTRUCTION, INC., an
Alabama Corporation; KVAERNER

U.S. INC., a Delaware Corporation;
LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts
Corporation; MARSH USA, INC., a
Delaware Corporation f/k/a J&H
MARSH & MCLENNAN, INC.;
LIBERTY INTERNATIONAL
CANADA, a division of LIBERTY
MUTUAL INSURANCE COMPANY, a
Massachusetts Corporation.

*Lexington Insurance Company,
Appellant
*(Pursuant to F.R.A.P. 12(a))

(D.C. Civil Action No. 01-cv-00440)

_____

On Appeal from the
United States District Court for the
Western District of Pennsylvania
District Judge: Hon. Arthur J. Schwab
_____

Argued on Tuesday, April 20, 2004
_____

Before:      SCIRICA, GARTH, and
             BRIGHT,* Circuit Judges

(Opinion Filed: June 10, 2004)

_____

*Honorable Myron H. Bright,
United States Court of Appeals for the
Eighth Circuit, sitting by designation.

1

DeCourcy, Dara A. (argued)
Zimmer, Harry J.
Zimmer Kunz
600 Grant Street
3300 USX Tower
Pittsburgh, PA  15219

*Attorneys for Appellant Lexington
Insurance Company*

Doty, Robert W.
Ejzak, Richard A. (argued)
Roman, Andrew M.
Cohen & Grigsby, P.C.
11 Stanwix Street, 15th Floor
Pittsburgh, PA  15222

Rogers, E. Mabry
Bradley, Arant, Rose & White, LLP
1819 Fifth Avenue North
Birmingham, AL  35203

*Attorneys for Appellee Kvaerner U.S.
Inc.*

Luciana, Joseph L. III
Lund, Kenneth J.
Paciaroni, Richard F.
Kirkpatrick & Lockhart LLP
535 Smithfield Street
Henry W. Oliver Building
Pittsburgh, PA  15222

Lucas, Kevin P.
Williams, Robert J.
Manion, McDonough & Lucas P.C.
600 Grant Street
Suite 1414
Pittsburgh, PA  15219

Harper, Steven J. (argued)
Kirkland & Ellis LLP
200 East Randolph Drive
Suite 6500
Chicago, IL  60601

Landau, Christopher
Kirkland & Ellis LLP
655 15th Street, N.W.
Suite 1200
Washington, DC  20005

*Attorneys for Appellees IPSCO Steel
(Alabama) Inc. and IPSCO Construction
Inc.*

Medved, George M.
Pepper Hamilton LLP
500 Grant Street
5000 One Mellon Bank Center
Pittsburgh, PA  15219

Little, J. Ford
Noell, Robert P.
Walton, Monty L.
Woolf, McClane, Bright, Allen &
Carpenter, PLLC
900 South Gay Street
Suite 900, Riverview Tower
Knoxville, TN  37902

*Attorneys for Appellee Blaine
Construction Corporation*

Long, Kevin M.
Van Vugt, Eric J.
Quarles & Brady LLP
411 East Wisconsin Avenue, #2500
Milwaukee, WI  53202

2

Sommer, Robert B.
Hergenroeder, Rega & Sommer
332 Fifth Avenue
Suite 610
Pittsburgh, PA 15222

*Attorney for Appellee Marsh USA, Inc.*

Reed, Jonathan S.
Smith, Sean K.
Traub, Richard K.
Traub, Eglin, Lieberman & Straus
100 Metroplex Drive
Metroplex Corporate Center I, Suite 203
Edison, NJ 08817

Sherman, C. Leon
C. Leon Sherman & Associates
20 Stanwix Street
5th Floor
Pittsburgh, PA 15222

*Attorneys for Appellee Liberty Mutual Insurance Company*

_____

OPINION

_____

Garth, <u>Circuit</u> <u>Judge</u>:

In a companion case decided today, *see IPSCO Steel (Alabama) Inc. v. Blaine Constr. Corp.,* Docket Nos. 03-2929/2966, -- F.3d -- (3d Cir. 2004), we have held that the District Court properly approved two Settlement Agreements involving IPSCO Steel (Alabama), Inc. and IPSCO Construction, Inc. (collectively "IPSCO"), Kvaerner U.S. Inc. ("Kvaerner"), Marsh USA, Inc. ("Marsh"), and Liberty Mutual Insurance Company ("Liberty Mutual"), who had been embroiled in litigation arising out of a construction project in Alabama. The Settlement Agreements brought to an end the two lawsuits that had been filed in Pennsylvania involving those parties who, among others, were the project owner (IPSCO), the project manager (Kvaerner), the project insurer (Liberty Mutual), and the insurance broker (Marsh).

The instant appeal was filed by Lexington Insurance Company ("Lexington"), which had issued a $25 million professional liability insurance policy to Kvaerner in 1998. Under the terms of that policy, Kvaerner may look to Lexington for insurance proceeds only after any "project-specific" policies are exhausted. Kvaerner is a named insured under a $20 million policy issued by Liberty Mutual specifically for the construction project.

Because the Settlement Agreements effectively capped Liberty Mutual's "project specific" policy at approximately $11 million,[1] Lexington had registered

_____

[1] As we have discussed in the companion case, *IPSCO Steel (Alabama) Inc. v. Blaine Constr. Corp., supra,* Liberty Mutual had paid $5 million in court expenses for Kvaerner and had settled the Construction Action for $6

objections in the District Court to the Settlement Agreements approved in the companion case, *IPSCO Steel (Alabama) Inc. v. Blaine Constr. Corp.,supra.* Unlike Kvaerner, however, Lexington was not a named party to the proceedings and did not move to intervene pursuant to Federal Rule of Civil Procedure 24.[2] After the District Court approved the settlements and dismissed the two lawsuits, Kvaerner and Lexington filed separate notices of appeal. We have disposed of Kvaerner's appeal in the companion case, leaving only Lexington as the Appellant here.

On appeal, Lexington presents two arguments as to why the District Court should not have approved the Settlement Agreements. However, IPSCO has moved to dismiss Lexington's appeal on grounds of standing. Quoting from *Marino v. Ortiz,* 484 U.S. 301 (1988), IPSCO argues that "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment." *Id.* at 304.

Ordinarily, only parties of record before the district court have standing to

---

million for a total expenditure of $11 million under the $20 million policy.

[2] In its Notices of Appeal, Lexington incorrectly states that it was an "Intervenor" in the District Court. Although Lexington filed briefs in the District Court opposing the proposed settlements and participated in the hearing, it did not move to intervene in the District Court or in our Court.

appeal. *Caplan v. Fellheimer Eichen Braverman & Kaskey,* 68 F.3d 828, 836 (3d Cir. 1995). However, our Court carved out an exception to that principle in 1992 when it decided *Binker v. Pennsylvania,* 977 F.2d 738 (3d Cir. 1992). The so-called *Binker* exception provides that "a nonparty may bring an appeal when three conditions are met: (1) the nonparty had a stake in the outcome of the proceedings that is discernible from the record; (2) the nonparty has participated in the proceedings before the district court; and (3) the equities favor the appeal." *Northview Motors, Inc. v. Chrysler Motors Corp.,* 186 F.3d 346, 349 (3d Cir. 1999).

Lexington contends that it fits within the *Binker* exception because (1) it may potentially be liable to pay a judgment that, in the absence of the Settlement Agreements, Liberty Mutual, as the "project-specific" insurer, would have had to pay; (2) it attended a settlement conference and mediation before the District Court and submitted a brief in opposition to the motion to approve the Settlement Agreements; and (3) it seeks to protect not only its own interests, but also those of its insured, Kvaerner.

Even if we were satisfied that Lexington met all three prongs of the *Binker* exception, which we need not decide, we are persuaded that it does not have standing to pursue this appeal. To understand why that is so, we must consider three distinct but related concepts: intervention pursuant to Federal

4

Rule of Civil Procedure 24; Article III standing to pursue the original controversy; and standing to appeal a district court ruling. Although the *Binker* Court couched its three-part test in terms of "standing to appeal," *see Binker,* 977 F.2d at 745, the first prong of the *Binker* test focused on Article III standing to pursue the original controversy because it required that the non-party had a stake in the proceedings before the District Court, thereby satisfying Article III's "case-or-controversy" requirement.

Statutory standing to appeal, by contrast, need not meet the case-or-controversy standard, but must meet the test of a party that is aggrieved. "In order to have standing to appeal a party must be aggrieved by the order of the district court from which it seeks to appeal." *McLaughlin v. Pernsley,* 876 F.2d 308, 313 (3d Cir. 1989) (citing *Watson v. Newark,* 746 F.2d 1008 (3d Cir. 1984). "The rule is one of federal appellate practice, however, derived from the statutes granting appellate jurisdiction and the historic practices of the appellate courts; it does not have its source in the jurisdictional limitations of Art. III." *Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 333 (1980). Thus, a party who does not intervene in the district court (or did not have Article III standing to pursue the original action) may nevertheless have standing to pursue an appeal if it can show that it was adversely affected by the judgment. *See e.g., Binker,* 977 F.2d at 745; *see also* 15A Wright, Miller & Cooper, Federal Practice and Procedure:

Jurisdiction 2d § 3902.

The issue here is whether Lexington was sufficiently aggrieved by the District Court's order such that it has standing to appeal. Our decision in *Travelers Insurance Company v. H.K. Porter Co.,* 45 F.3d 737 (3d Cir. 1995) is particularly instructive. There, the plaintiff-insurer (Travelers) appealed a bankruptcy court order granting a motion to vacate the withdrawal of certain creditors who had asbestos-related claims against the bankrupt defendant-insured. We held that Travelers lacked standing to appeal because it was not a "person aggrieved" by the order since its "potential exposure [was] doubly removed, turning both on the success of the Claimants in their prosecution of claims against [the insured party], and on a judicial determination that the policy issued by Travelers cover[ed] the claims, a construction which Travelers strenuously reject[ed]." *Id.* at 742.

The same considerations that drove our decision in *Travelers* are present here. Under the two Settlement Agreements approved by the District Court, Liberty Mutual and Marsh had agreed to pay a total of $6.5 million to settle various claims brought against them in the Pennsylvania lawsuits.[3] The Settlement Agreements do not require Lexington to

---

[3] Liberty Mutual paid $6 million in settlement; Marsh paid $500,000 in settlement.

5

make any payments, inasmuch as the "project-specific" insurer is Liberty Mutual. Hence, Lexington was not directly aggrieved by either the Settlement Agreements or the District Court's orders approving them.

The only other lawsuit that has been brought to our attention which potentially implicates the policy issued by Lexington is an action filed in Alabama by IPSCO, the project owner, against Kvaerner for alleged cost overruns. That lawsuit, which is ongoing and was not affected by the two Settlement Agreements approved by the District Court, has resulted in substantial defense costs for Kvaerner. But almost all of those defense costs have been paid and are continuing to be paid by Liberty Mutual.[4] Therefore, any real exposure to which Lexington is subject is contingent on a judgment being entered in the Alabama lawsuit against Kvaerner and in favor of IPSCO, an event that has not yet occurred. As in *Travelers,* Lexington is at least two steps removed from any real effect to its policy because IPSCO must first succeed on its claims against Kvaerner and, even if it is successful, Kvaerner must prove that the policy covers the damages awarded in the Alabama action.[5]

Lexington has tried to distinguish our holding in *Travelers* on the ground that it involved an appeal from a bankruptcy court, which triggers its own unique set of standing principles. It is true that "the standing requirement in bankruptcy appeals is more restrictive than

---

[4] In a separate agreement, which has been sealed by both the District Court and by us, Liberty Mutual agreed to pay 89% of Kvaerner's defense costs in the Alabama action, with Kvaerner paying the remaining 11%. If Kvaerner prevailed on its counterclaims against IPSCO, Liberty Mutual could recover its costs. Although this agreement is sealed, at least this provision was discussed at oral argument. The record does not disclose whether the obligation undertaken by Liberty Mutual is exclusive of the $11 million that remained under the Liberty Mutual policy.

[5] We recognize two other factors that further attenuate Lexington's standing to appeal. First, Lexington might well resist paying any judgment rendered against Kvaerner unless the judgment exceeds $6.5 million because IPSCO has already been reimbursed for damages in that amount through the Settlement Agreements with Liberty Mutual and Marsh. Second, Kvaerner has informed us in the companion case of *IPSCO Steel (Alabama) Inc. v. Blaine Constr. Corp., supra,* that even if IPSCO was to obtain a judgment against Kvaerner in the Alabama lawsuit, Lexington may argue that it has no obligation to indemnify or reimburse Kvaerner because the Liberty Mutual policy was not fully exhausted as a result of the Settlement Agreements.

the 'case or controversy' standing requirement of Article III, which 'need not be financial and need only be 'fairly traceable' to the alleged illegal action." *Travelers,* 45 F.3d at 741 (quoting *Kane v. Johns-Manville Corp.,* 843 F.2d 636, 642 n.2 (2d Cir. 1988)). Yet in a non-bankruptcy context the Supreme Court has stated that "[o]rdinarily, only a party *aggrieved* by a judgment or order of a district court may exercise the statutory right to appeal therefrom." *Deposit Guar.,* 445 U.S. at 333 (emphasis added). Thus, it does not follow that we would have reached a different outcome in *Travelers* under Article III's slightly more relaxed standing requirement. Even under the "fairly traceable" standard, we hold that Lexington does not have standing to appeal because its injury, if any, is far too speculative and far too attenuated for Lexington to be aggrieved.

Moreover, even if Lexington had standing to appeal, we would not be persuaded by the arguments that it has raised in its appellate briefs. Lexington's primary argument is that the District Court abused its discretion because it did not determine whether the proposed Settlement Agreements were fair and reasonable before approving them. The "fair and reasonableness" analysis is, however, generally reserved for settlements in class action lawsuits (or derivative shareholder lawsuits), where the district court must be vigilant in protecting the due process rights belonging to the class members. *See* Fed. R. Civ. P. 23(e)(1)(C) ("The court may approve a [class action] settlement . . . that would bind class members only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate."). Because the lawsuits before the District Court here were not class actions, the District Court was under no duty to review the proposed Settlement Agreements for fairness or reasonableness. The parties' relationships were defined entirely by fully-integrated contracts and there was no reason for the District Court to examine the fairness or reasonableness of the two Settlement Agreements, which were negotiated by sophisticated parties and their counsel.

For the foregoing reasons, we will dismiss the two appeals[6] taken by Lexington from the District Court's orders entered on June 6, 2003.

---

[6] Lexington appealed from *IPSCO Steel (Alabama) Inc. v. Blaine Constr. Corp.,* Civil Action Nos. 99-CV-2055 and 01-CV-440, without having intervened in either.

7