**DISABLED IN ACTION OF PENNSYLVANIA,**
Plaintiff

v.

**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, and the City of Philadelphia, Defendants.**

Civil Action No. 03–1577.

United States District Court, E.D. Pennsylvania.

Nov. 30, 2004.

Stephen F. Gold, Philadelphia, PA, for Plaintiff.

Saul H. Krenzel, Saul H. Krenzel & Associates, Philadelphia, PA, for Defendants.

Memorandum

PRATTER, District Judge.

Plaintiff Disabled in Action ("DIA") moves for an Order dismissing Defendant City of Philadelphia (the "City") without prejudice from this case. The City has executed a settlement agreement (the "Settlement Agreement") with DIA which resolves all of the claims that DIA had against the City in this matter. The remaining defendant, Southeastern Pennsylvania Transportation Authority ("SEPTA"), has objected to the Settlement Agreement for various reasons, as discussed herein. For the reasons that

· follow, the Motion to Dismiss the City of Philadelphia is granted.

## FACTUAL BACKGROUND

The present Motion to Dismiss the City of Philadelphia arises in the context of the issues between DIA and the City and SEPTA. The gravamen of the dispute between DIA and SEPTA is the construction of facilities that would allow disabled individuals to utilize SEPTA's City Hall transit station. DIA alleges that SEPTA, after modifying the entrance to the City Hall station on the northwest corner of 15th and Market Streets, triggered an obligation under the Americans with Disabilities Act ("ADA") to make the City Hall transit station accessible to disabled individuals. DIA also argues that this particular transit station should be considered a "key station" as defined by the ADA, an assertion that SEPTA vigorously disputes.[1] In this action, DIA asks the Court to order SEPTA to construct facilities at the City Hall transit station, including an elevator that would provide individuals in wheelchairs access to the subway and trolley platforms.

Because the City owns the land upon which the modifications, if ordered, would be made, SEPTA argued at the inception of the case that the City had to be joined in the action as an indispensable party. Because the City was not then a party, SEPTA moved to dismiss the complaint.[2] DIA elected not to engage in motion practice and subsequently amended its complaint to add the City as a party.[3]

On August 5, 2004, DIA filed its motion to dismiss the City without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(2) on the basis that DIA and the City had resolved any disputes between them with respect to this action.[4] On August 16, 2004, DIA filed the Settlement Agreement between itself and the City, in which the parties agree that should the relief DIA requests against SEPTA be granted, the City will permit SEPTA to use City property for the construction of the requested modifications of the City Hall transit station. [Docket No. 49]. The City's permission is contractually conditioned upon certain actions to be taken by SEPTA, including applying for permits as required by law, which will necessarily require SEPTA to comply with the City's various health and safety guidelines, including the building, fire and electrical codes. *Settlement Agreement* at § 3. In addition, the City's permission to use the land is conditioned upon SEPTA agreeing to an entry agreement with the City and receiving approval from the City for the design of the facility. *Settlement Agreement* at § 3. In the Settlement Agreement, the City specifies that it may require SEPTA to make modifications to the location or design of any facility to be constructed pursuant to the ultimate resolution of this case. *Settlement Agreement* at § 3.

SEPTA filed its opposition to the Motion to Dismiss the City on August 25, 2004. In its opposition, SEPTA asserts the following

---

1. SEPTA has moved to dismiss the portions of the Third Amended Complaint relating to DIA's key station assertions. [Docket No. 32].

2. SEPTA premised its Motion to Dismiss the Complaint on Federal Rule of Civil Procedure 12(b)(7), arguing that because the City of Philadelphia owned the land on which the proposed renovations were to take place, DIA had not properly joined all parties necessary to resolve the dispute.

3. A Second Amended Complaint was filed on October 10, 2003, and the present version of the complaint—the Third Amended Complaint—was filed on January 7, 2004. SEPTA filed an answer to the original complaint, as well as the First and Second Amended Complaints. SEPTA did not file an answer to the Third Amended Complaint, but rather filed a Motion to Dismiss and Motion to Strike Portions of the Third Amended Com-

plaint, which remains pending before this Court. The City did not file an answer or responsive pleading to any of the complaints. SEPTA has, however, moved to compel the City to answer, a motion that remains unresolved but will, by virtue of the attached order, be denied as moot.

4. As SEPTA notes, this motion was filed by DIA in compliance with Section 5 of the Settlement Agreement between DIA and the City that provides for DIA to file a motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 41(a)(2). As discussed herein, even without the referenced contractual provision, the Court believes that DIA could have dismissed the City from this action by filing a notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1).

reasons for the motion to be denied: (1) SEPTA believes that the City is a necessary party to the litigation, and, as such, may not be dismissed unless and until the entire case is resolved; (2) the Settlement Agreement is the product of collusion between DIA and the City, and is therefore an improper agreement; and (3) the City's dismissal from the action will result in actual and substantial legal prejudice to SEPTA due to alleged multiple outstanding discovery abuses by the City.

The City responded to SEPTA's opposition on September 3, 2004, arguing that (1) because the City has not filed an answer to the complaint, DIA has an absolute right to dismiss the City pursuant to Federal Rule of Civil Procedure 41(a)(1)(i); (2) because the Settlement Agreement resolves all claims between DIA and the City, the City is no longer a necessary party to the litigation; (3) DIA, the only party asserting a claim in this case,[5] can be granted complete relief in the matter because DIA has resolved all of its claims against the City; (4) the Settlement Agreement is not collusive; and (5) the discovery allegations that SEPTA sets forth are irrelevant and false, and therefore should not stand in the way of dismissing the City pursuant to the Settlement Agreement.

## DISCUSSION

### I. Dismissal Pursuant to Rule 41(a)

This case requires, among other things, the Court to consider the intersection between two of the Federal Rules of Civil Procedure, Rule 19(a)(2) and Rule 41(a). Rule 19(a)(2), which contains two sub-parts, addresses the joinder of necessary parties in a federal action:

> [a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if ... the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reasons of the claimed interest.

FED.R.CIV.P. 19(a)(2).

Rule 41(a) also contains two sub-parts, each addressing the voluntary dismissal of an action by a plaintiff. Rule 41(a)(1) states that "an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action." FED.R.CIV.P. 41(a)(1). The second subpart of Rule 41(a) provides that if dismissal cannot be achieved by the means provided in Rule 41(a)(1), "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." FED.R.CIV.P. 41(a)(2).

SEPTA argues that because it views the City as an indispensable party pursuant to Rule 19(a)(2), the City cannot be dismissed from this action at all, despite the fact that the City has settled its dispute with DIA. In response, the City first argues that under Rule 41(a)(1), DIA has an absolute right to dismiss the City from the action because the City has neither answered the complaint nor filed a motion for summary judgment. In the alternative, the City argues that its dismissal under Rule 41(a)(2) is proper because it has agreed to allow SEPTA to use the land the City owns to construct the facilities DIA is asking the Court to order, thereby removing the only reason for the City to be involved in the case.

### A. Dismissal Pursuant to Rule 41(a)(1)

Rule 41(a)(1)(i) provides that a plaintiff may voluntarily dismiss an *action* without an order of court "by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs." Fed.R.Civ.P. 41(a)(1)(i). This provision has been interpreted to grant a plaintiff an abso-

---

5. SEPTA has made not claim of its own against the City.

lute right to dismiss a case. *See Plains Growers, Inc. v. Ickes–Braun Glasshouses, Inc.,* 474 F.2d 250, 253 (5th Cir.1973). In interpreting Rule 41(a), courts do not agree as to whether the term "action" requires that a plaintiff dismiss its entire case against all defendants, or whether the Rule requirement is met if the plaintiff dismisses its entire claim against one of several defendants while proceeding with claims against others. The majority of courts have adopted the view that Rule 41(a) allows a plaintiff to voluntarily dismiss its entire case against one defendant, while maintaining the case against the remaining defendants, providing that no answer or motion for summary judgment has been filed by the defendant to be dismissed. *See Sealskin v. Harrison Baking Co.,* No. 90–2610, 1990 WL 131901, at * 1 (E.D.Pa. Sept.12, 1990) ("[a] voluntary dismissal by a plaintiff may be effective against fewer than all defendants in the suit"); *Sheldon v. Amperex Electronic Corp.,* 52 F.R.D. 1, 9 (E.D.N.Y.1971) (service of summary judgment motion by some defendants did not foreclose plaintiff from voluntarily dismissing other defendants that had not filed a responsive pleading); *Wright & Miller, Federal Practice and Procedure: Civil 2d* § 2362 (West 1995).

Courts within the Third Circuit have only addressed the issue in the discretionary context of Rule 41(a)(2), and not the "absolute right" context provided by Rule 41(a)(1). For example, in *Young v. Wilky Carrier Corp.,* 150 F.2d 764 (3d Cir.1945), plaintiffs filed suit against two defendants, Welty and Wilky Carrier Corporation, for injuries suffered in an automobile accident. *Young,* 150 F.2d at 764. The plaintiffs subsequently realized that they would not be able to prove a case against Welty, and voluntarily dismissed their complaint as to Welty before the nonjury trial began. Wilky objected, arguing that state law allowing for contribution between the defendants gave Wilky the right to detain Welty in the case at least until all evidence was discovered. The court disagreed and allowed the dismissal. *Id.* The Court of Appeals for the Third Circuit affirmed, noting in a concurring opinion that the dismissal was permissible under Rule

41(a) of the Federal Rules of Civil Procedure. *Id.* at 765.

*Young* has subsequently been relied upon by district courts within the Third Circuit to conclude that Rule 41(a) does allow a plaintiff to dismiss its entire claim as to one of many defendants. *See, e.g., Plasterer v. Hahn,* 103 F.R.D. 184, 185 (M.D.Pa.1984) (noting that when a plaintiff wishes to release entire claim as to one of several defendants, Rule 41(a)(2) applies); *Smith Kline & French Laboratories v. A.H. Robins Co.,* 61 F.R.D. 24 (E.D.Pa.1973) (finding that Rule 41(a)(2) does not permit dismissal of some, but not all, claims against one defendant).

■ As this Court reads *Young,* DIA does have a right to dismiss all of its claims against the City. However, because the motion to dismiss the City was brought pursuant to Rule 41(a)(2), and not Rule 41(a)(1), the Court will consider the parties' arguments pursuant to Rule 41(a)(2) pursuant to which leave of court is required.

**B. Dismissal in Light of Rule 19(a)(2)(ii)**

■ SEPTA asserts that Rule 19(a)(2)(ii) precludes the Court's allowance of dismissal of the City because as a "necessary party" to the litigation, the City's dismissal would leave a substantial risk that SEPTA will be subject to multiple lawsuits and obligations involving the same or similar issues. SEPTA specifically argues that if the City is dismissed without prejudice pursuant to the terms of the Settlement Agreement, SEPTA faces a substantial risk of incurring litigation with the City relating to the various approvals and permits that SEPTA would be required to obtain should DIA prevail against SEPTA in this case.

In support of its argument, SEPTA cites *National Organization on Disability v. Tartaglione,* No. 01–1923, 2001 WL 1231717 (E.D.Pa. Oct.11, 2001) for the proposition that the need to obtain City permits and approvals would introduce a substantial risk of duplicative litigation. In *Tartaglione,* a group of organizations acting as advocates for the disabled filed suit against the Commissioners of the City of

Philadelphia alleging that the lack of electronic voting machines available to disabled individuals violated federal law. *Tartaglione*, 2001 WL 1231717, at * 1. In response, the Commissioners asserted that the complaint should be dismissed for failure to join the Commonwealth of Pennsylvania, which would have to approve the use of any new voting machines that might be required as a result of the suit. *Id.* at *8. The court agreed, finding that if the plaintiffs prevailed, they might have to file a new proceeding against the Commonwealth to implement the court order requiring the machines. *Id.* at *9.

*Tartaglione* is inapplicable to this case. It is true that this case is facially similar to *Tartaglione* in that the City, like the Commonwealth, would have to grant its approval if the plaintiff prevails. However, the relevance of this similarity is extinguished by one obvious distinction that SEPTA ignores—in this case, the City *has* been joined in the action, and has already granted its permission to SEPTA to use its land for the requested modifications should DIA prevail. Thus, *Tartaglione* is not instructive here because that case did not address the dismissal of a previously "indispensable party" that has subsequently settled all claims against it that were involved in the suit, including in that settlement the issue(s) ostensibly important to the objector.

■ Additionally, SEPTA has not established that the City has retained any interest in the subject matter of this action that would render the prospect of subsequent litigation to be "substantial," as is required by Rule 19(a)(2)(ii).[6] Rule 19(a)(2)(ii) provides that a party must be joined in an action if "the *person* claims an interest to the subject of the action." (emphasis added). A close reading of Rule 19(a)(2)(ii) reveals that the *person* claiming an interest in the subject of the action is the *person that must be joined*—in this case, the City. Because the City has resolved its interest in the action with DIA by providing that it will permit the construction to occur on the City's property,

as long as the appropriate approvals (which would be required for any construction project) are properly obtained, the City no longer has an interest in the suit. Thus, the only possible litigation that theoretically might ensue from this case would be related to the permits that SEPTA would have to obtain from the City if DIA prevails.

SEPTA asserts that obtaining such approvals will "certainly" result in litigation, but the Court finds this argument without merit. There is nothing unusual about the City requiring such approvals as a term of the Settlement Agreement, as it would be unlikely that all approvals could be obtained at this juncture in order to bring this matter to a final conclusion. Rather, this settlement term presents a practical and ordinary consideration—that if SEPTA is ordered to move forward with the construction demanded by DIA, it will need to obtain the proper permits for safety, zoning and similar regulatory matters, and adhere to all City regulations with respect to maintaining a safe environment for public use. Because SEPTA would have to adhere to these regulations for any project, the Court is unpersuaded that this is the City's way of "telegraphing" its intent to file suit against SEPTA at its earliest opportunity. Thus, the risk of subsequent litigation against SEPTA with respect to this case is not substantial.

### C. Dismissal in Light of Rule 19(a)(2)(i)

■ SEPTA next argues that dismissal of the City is not permitted pursuant to Rule 19(a)(2)(i) because complete relief cannot be afforded to all the parties without the City's continued presence in the suit. This argument is likewise unpersuasive. A review of the law with respect to the dismissal of a settling "indispensable" party suggests that once that party resolves the claims against it, the party may be dismissed from the action. *See, e.g., Glencore, Ltd. v. Chase Manhattan Bank, N.A.,* No. 92–6214, 1999 WL 182599 (S.D.N.Y. March 31, 1999) (granting plaintiff's motion to dismiss settling defendant

---

**6.** A substantial risk of subsequent litigation must consist of more than a mere possible risk of litigation. *Sindia Expedition, Inc. v. Wrecked and* *Abandoned Vessel known as "The Sindia",* 895 F.2d 116, 122 (3d Cir.1990).

while other defendants remained in suit); *Duke v. South Central Bell, Inc.,* No. 90–3088, 1992 WL 396282 (E.D.La. Dec. 17, 1992) (if indispensable defendant settled with plaintiff, motion to dismiss would be appropriate vehicle to release individual indispensable defendant from suit).

DIA has settled its claims against the City with respect to this case, has filed its Settlement Agreement for the record, and therefore would not be denied relief if the City is dismissed from the case. Eliminating the claims that were resolved in the Settlement Agreement, there remain no claims against the City, as SEPTA has filed none. Thus, as is patently clear, no party in this suit would be denied complete relief as a result of the City's dismissal.

## II. Collusion or Illusory Terms

SEPTA next argues that the Settlement Agreement between DIA and the City warrants close scrutiny by the Court to assess whether it is the product of collusion or is an illusory agreement.

### A. Collusion

▮▮▮ SEPTA argues that the Court should exercise its discretion to examine the Settlement Agreement to ensure that it was not a product of collusion. A district court has discretion to review a proposed settlement agreement to ensure that the agreement is fair and reasonable. *IPSCO Steel (Alabama), Inc. v. Blaine Construction Co.,* 371 F.3d 150, 155 (3d Cir.2004). However, exercise of this discretion is not frequent, and is "generally reserved for settlements in class action lawsuits ... where the district court must be vigilant in protecting the due process rights belonging to the class members." *IPSCO,* 371 F.3d at 155. Thus, in an appropriate circumstance, when considering whether to review a settlement agreement for fairness, a district court must focus on the individuals whose rights would be affected by the agreement's terms.

In support of the proposition that this Court should examine the Settlement Agreement for collusion, SEPTA cites *Caplan v. Fellheimer Eichen Braverman & Kaskey,* 68 F.3d 828 (3d Cir.1995). In *Caplan,* the court addressed the propriety of a district court's disapproval of a settlement agreement that had been entered into between a former employee of a law firm and the law firm's insurer. *Caplan,* 68 F.3d at 833. Although the settlement agreement resolved claims filed by the employee against the law firm employer, the law firm did not participate in the settlement negotiations, nor was it a party to the settlement agreement. *Id.* at 832.

In reviewing the propriety of a district court exercising a review and approval role over a settlement agreed upon by the litigants, the Court of Appeals for the Third Circuit noted that such a review would only be appropriate in certain situations, including "consent decrees, class actions, shareholder derivative suits, and compromises of bankruptcy claims where settlement of the suit requires court approval." *Caplan,* 68 F.3d at 835. Otherwise, the court noted that a district court has "neither the authority nor the resources to review and approve" settlements of the cases brought before it.

▮▮▮ As suggested by *IPSCO* and *Caplan,* the common thread between the types of circumstances in which it may be appropriate for a district court to review and approve a settlement agreement between litigants appear to be a need to protect parties that might have an interest in the litigation or whose rights are curtailed by the agreement but who are not a party to the settlement. That is not the case before this Court. Although the Settlement Agreement does state that the City's permission is conditioned upon SEPTA obtaining the proper permits and submit designs to the City for inspection, these are not actions that are forced upon SEPTA by the Settlement Agreement.

SEPTA also argues that because both DIA and the City were parties to a consent decree filed in the class action *Eastern Paralyzed Veterans Association of Pennsylvania, Inc. v. Sykes,* No. 86–6797 (E.D.Pa.1986), the Settlement Agreement warrants closer scrutiny. SEPTA specifically asserts that this case is extraordinary because key stations on SEPTA's transit system were identified in *EPVA v. Sykes,* and, according to SEPTA, the pres-

ent argument with respect to the City Hall transit station's status as a key station ties the two cases together. As such, SEPTA argues that any agreement resolving DIA's dispute with the City must somehow be related to the *EPVA* consent decree and, therefore, warrants extra scrutiny by the Court.

SEPTA's attempt to tie the Settlement Agreement to a consent order signed in *EPVA v. Sykes* suggests a judicial long jump that this Court does not believe is appropriate. The present litigation does revisit the key station issue, in that the Settlement Agreement states the parties' agreement that the City Hall transit station should be considered a key station under the ADA. However, the stipulation between DIA and the City simply states that those parties are in agreement on the issue of whether the transit station at issue should be considered a key station—it does not decide or otherwise resolve the case. It makes no attack on or modification of the *EPVA* consent order. Thus, any tenuous relationship to the *EPVA* case does not warrant review and approval of the Settlement Agreement by the Court.

SEPTA further argues that this litigation is extraordinary because both DIA and SEPTA are public entities, and that this litigation, and, by extension, the Settlement Agreement, will have a farreaching affect on the community. This assertion arguably ties into the need to protect parties affected by, but not involved in, settlements. However, the community that would most likely require protection—disabled individuals—would receive a benefit from the Settlement Agreement, in that the City is granting its permission to use its property to construct facilities that would increase access by disabled persons to the City Hall transit station. Thus, this argument by SEPTA at least without merit and may well be more aptly labeled disingenuous.

The Court concludes that there is no sufficient reason to overreach to exercise its discretion to scrutinize the Settlement Agreement. However, a cursory review of the Settlement Agreement indicates that the City is settling its dispute with DIA by allowing the use of its land for construction of facilities, if such construction is so ordered.

Although the Court acknowledges that DIA has presented a challenge with respect to the "key station" status of the City Hall transit station, the Settlement Agreement does not purport to resolve that dispute; it merely acknowledges the City's position on the matter. Clearly, the legal opinion expressed in the Settlement Agreement is nothing more than the City's legal position, not foisted upon the Court for any purpose germane to SEPTA. The City's disagreement with SEPTA with respect to the interpretation of the law does not resolve the litigation; the only resolution provided by the Settlement Agreement is of DIA's claim against the City. While SEPTA may believe certain statements in the Settlement Agreement to be surplusage or impertinent, these statements are not outcome determinative as to the ultimate conclusion of the case. For these reasons, the Court does not believe the close scrutiny of the Settlement Agreement is warranted and declines to engage in such an evaluation.

### B. Illusory Terms

■ SEPTA next argues that because the conditional permission the City gives for the use of its land is that which it would be legally obligated to do should the Court find in favor of DIA, the Settlement Agreement is illusory. This argument directly contradicts SEPTA's earlier assertion that the City is an indispensable party to the litigation, for if the City was obliged to provide its permission if DIA were to prevail, even in the absence of the Settlement Agreement, there was no reason to argue that DIA was obliged to join the City in the litigation as an indispensable party initially. Aside from this fact, it is unclear what else one would expect the Settlement Agreement to include.

As discussed above, the terms of the Settlement Agreement requiring building code approvals relate directly to the health and safety of the public and appear to be logical and responsible items to include in an agreement such as this. It is the Court's understanding that the reason the City was joined as a party to the litigation was that it owns the property that would be affected should DIA prevail, and that the City would need to

give its permission to use the property. That is exactly what the Court sees the Settlement Agreement achieving. Thus, the Settlement Agreement is not illusory.

### III. Prejudice to SEPTA with Respect to Discovery

 SEPTA finally argues that dismissing the City at this point in the litigation would result in actual and substantial legal prejudice to SEPTA because the City has allegedly thwarted SEPTA's discovery efforts as to the City. SEPTA reasons that it has incurred significant expenses in its effort to have the City comply with its discovery requests, and a dismissal at this time would prejudice SEPTA because it still needs to obtain information from the City to take the litigation to its completion.

While the Court acknowledges that there have been various discovery disputes (including many prompted by SEPTA's refusals to disclose its materials and information) with respect to all parties to this litigation, it does not agree that dismissing the City will result in substantial prejudice to SEPTA. Dismissal of the City does not preclude SEPTA from deposing City representatives, and, to the extent that SEPTA needs documentation from the City, it will be able to issue subpoenas to obtain it. The Court notes that prior to considering the Motion to Dismiss the City the Court required SEPTA and the City to seriously address the discovery disputes between them and believes that they have reported resolution of most, if not all, such issues. Thus, the City's dismissal will not substantially prejudice SEPTA.

*CONCLUSION*

For the reasons stated above, Disabled in Action's Motion to Dismiss the City of Philadelphia pursuant to the Settlement Agreement is granted, and SEPTA's Motion to Compel the City to File an Answer to the Third Amended Complaint is denied as moot. An appropriate Order follows.

### ORDER

AND NOW, this 30 day of November, 2004, upon consideration of the Plaintiff's Motion to Dismiss the City of Philadelphia

without Prejudice [Docket No. 43] and the responses of SEPTA [Docket No. 52] and the City [Docket No. 55] thereto, it is hereby ORDERED that the Motion is GRANTED. The City of Philadelphia is hereby DISMISSED from this action without prejudice.

It is further ORDERED that the Motion to Compel the Defendant City of Philadelphia to File an Answer to Plaintiff's Third Amended Complaint [Docket No. 35] is DENIED AS MOOT.